## The People on the relation of Daniel J. Campau v. The Circuit Court for the County of Wayne in Chancery.

The writ of prohibition can not be issued to restrain any action of inferior courts which can be reviewed by any of the ordinary methods.

Under our probate system, a very large portion of the old equity jurisdiction is vested in the courts of probate; and it seems that the Court of Chancery has jurisdiction in those cases only in which an adequate remedy does not exist in the Probate Court.

A bill in equity was filed against the special guardian of a non compos, by one who, on appeal from the Probate Court, had been appointed general guardian. The bill alleged that error had been brought on the order appointing complainant such guardian; that defendant also prolonged by appeal proceedings

11 MICH.—Z.

taken for his removal, and threatened further litigation, and was grossly misbe-
having as special guardian. And it prayed for an injunction, the appointment
of a receiver, and for an accounting. It was held that the bill showed a case
of equity jurisdiction to grant the preliminary relief prayed, and a writ of
prohibition to restrain the action of the Court of Chancery upon it was refused.

*Heard May 12th and 13th. Decided May 30th.*

Motion on behalf of Daniel J. Campau and Francis
Palms, two of the defendants to a suit pending in the
Circuit Court for the county of Wayne in Chancery, for
a writ of prohibition, to be directed to said Court. The
petition therefor had attached to it a copy of the bill in
that cause, from which the following facts appear:

The complainants are children and presumptive heirs
at law of Joseph Campau, who is upwards of 94 years old.

In 1860, the relators, Daniel J. Campau, who is also
one of the children of said Joseph, and Francis Palms,
who is a son in law, together with the wife of said Fran-
cis, and several other of his children, applied to the Probate
Court for the county of Wayne, under § 3311 Compiled
Laws, for the appointment of a guardian of said Joseph,
as mentally incompetent, by reason of old age, to have the
care and management of his property.

Such proceedings were thereupon had, that the Judge
of Probate, on the tenth day of December, 1860, made an
order or decree, finding such incompetency, and appointing
Henry C. Knight guardian.

From this order, an appeal was taken in the name of
said Joseph, by one of the complainants, Alexander T.
Campau, purporting to act on behalf and as agent for said
Joseph, and also for himself, Alexander T., individually.

Subsequently, by an act passed in 1862, said § 3311
was so amended as to empower the Judge of Probate,
in case of an appeal from his action in appointing a guar-
dian under said section, in his discretion to appoint a
special guardian of the supposed *non compos*, to act pend-
ing the appeal and litigation relative to the appointment
of general guardian, said special guardian to have like

power and perform like duties as a general guardian, and no appeal to be taken from such appointment.

Under this act the relator, Daniel J., was, in January, 1862, appointed special guardian of said Joseph.

He thereupon assumed to appear for and represent said Joseph in said appeal, and persuaded said Alexander T, to dismiss his individual appeal.

Complainants, Theodore J. and Dennis J., and defendant James J. Campau, then petitioned the Circuit Court, under § 3636 Compiled Laws, for leave to appeal from said order. Leave was granted, and the appeal taken and perfected.

The bill alleges that the relators resisted all efforts to bring such appeal to trial. A trial however was reached at the last February term of said Court, and that part of the said order of the Probate Court which appointed said Knight guardian, was set aside, on the ground that, under the circumstances, said Knight was not a proper person to act as guardian of said Joseph, and said Dennis was appointed guardian, and the matter remitted to the Probate Court to fix and approve the bonds of said Dennis, and for further proceedings.

Thereupon said relator, Daniel J., sued out a writ of error to this Court, and when application was made to the Probate Court to proceed and fix and approve the bond of said Dennis, objected because of the pendency of said writ of error; and the Judge of Probate declined to proceed.

The bill further alleges, that said Daniel J. has interposed all obstacles in his power to the appointment of a general guardian, in order to retain his position as special guardian.

That he is an unfit person for the position of guardian of said Joseph, and that he is grossly mismanaging the property of the estate.

The bill also shows that a petition had been filed by complainants or some of them in the Probate Court, for

the removal of Daniel J. from the guardianship for cause alleged: that Daniel J. excepted to this petition, the Judge of Probate overruled his exceptions, and ordered him to answer, from which order he appealed to the Circuit Court, whereupon the petitioners discontinued the appeal.

The bill prays for injunction, prohibiting said Daniel J. from interfering with the estate of said Joseph, and that a receiver may be appointed of said estate pending the litigation; that said Daniel J. be removed from the position of special guardian, and that a general guardian of the person and estate of said Joseph may be appointed.

Upon filing this bill, complainants moved for an injunction and receiver as prayed.

Daniel J. answered, denying jurisdiction. Palms demurred, and the Circuit Judge assuming to entertain jurisdiction upon the motion for injunction and receiver, said Daniel J. and Palms apply to this Court for writ of prohibition.

*L. Bishop* and *A. Pond*, for the motion:

I. The Circuit Court in Chancery has no jurisdiction over the subject matter of said bill of complaint, and hence no jurisdiction to grant an injunction and appoint a receiver as prayed.

The object of the bill is, as its prayer indicates, the removal of Daniel J. as special guardian and the appointment of a general guardian, and the injunction and receiver are asked pending the litigation in that behalf *under this bill.*

The Constitution gives to the Circuit Courts original jurisdiction in all matters civil and criminal not excepted in the Constitution and not prohibited by law, and appellate jurisdiction from all inferior courts and tribunals, and supervisory control over the same.

The statute, Comp. L. § 3475, provides that "the powers and jurisdiction of the Circuit Courts in Chancery shall be co-extensive with the powers and jurisdiction of the Court

of Chancery in England, with the exceptions, additions and limitations created and imposed by the Constitution and laws of the State."

This is very broad and general language, and must, we think, be taken with a qualification. It never was intended to confer upon our Courts, and they have never assumed to exercise, *all the powers and jurisdiction* exercised in England by or through "the Court of Chancery:" — *Goldsmith's Eq.* 6 *et seq.*; 3 *Bl. Com.* 47; 1 *Story Eq. Juris.* §38.

1. Our construction of the statute is, that by the Court of Chancery in England we are to understand the Court of Chancery as a *Court of Equity*.

2. But as matter of fact, the Court of Chancery in England *as such* never had or exercised jurisdiction over idiots and lunatics and their committees.

This jurisdiction was vested in the *Chancellor* or person holding the great seal: — *Shelf. on Lunatics,* 11, 12, 15 *et seq.*, also 25, 166, 784; *Stock. on Non Compos Mentis* 79, 125; *Story Eq. Juris.* §§1334, 1335 and 1336 *et seq.;* *Philips ex parte,* 19 *Ves.* 122; *Oxenden v. Lord Compton,* 4 *Brown Ch.* 231; *Oakley Ex. v. Long,* 10 *Humph.* 254.

It will, we presume, be admitted that the power to *appoint* the *committee* was in the Chancellor or Keeper of the Great Seal, by warrant under the sign manual. But it will be contended, from some loose expressions to be found in the books, and especially in 2 *Sch. & Lef.* 436, that the *control* and *direction* of the committe after appointment is in the court. This is not so.

1. Appeal from all orders in lunacy, is to the King in council, and not to Lords in Parliament :— *Shelf. p.* 12; 3 *P. Wms.* 108; 2 *Ves.* 72; 4 *Bro. Ch.* 231; *Story Eq. Juris.* §1364 *note* 2; 10 *Humph.* 257.

2. Acts of Parliament relative to the subject of lunatics and idiots and their committees, distinguish between the "Chancellor" and the "Court of Chancery" — *Shelf.* 318,

323, 332; *Stock. on Lunatics*, 212, 241, 249; *Hill on Trustees*, 95.

3. Whilst it is true that the language frequently used in the books would seem to warrant the conclusion that the control of the committees is in the Court, as in *Shelford on Lunatics*, 17, yet when essential the distinction is made: — *Shel.* 166; 6 *Ves.* 782; 1 *B. & B.* 241.

The Court of Chancery in England having never exercised jurisdiction over lunatics and idiots or their committees, our Legislature acted with intelligence and forethought in providing for the vesting of this jurisdiction in some tribunal, as they have in the Probate Court.

The whole subject of guardian and ward is covered by the statute. Compiled Laws § 3225 makes provision for guardians.

The jurisdiction of the Probate Court is exclusive. That such was the understanding of the Legislature is shown by Compiled Laws, § 3310. See also *Blanton v. King*, 2 *How. Miss.* 857; *Steen v. Steen*, 25 *Miss.* 513.

The bill is not, as may be claimed, a bill to protect property pending litigation in another Court.

There is no litigation pending in the Probate Court for removal of Daniel J. from the position of special guardian.

What is alleged relative to the commencement and discontinuance of proceedings for his removal is wholly immaterial.

The absurdity of entertaining a bill of this character other than as collateral to proceedings in the Probate Court for the removal of Daniel J., is apparent in this; that Daniel J. can not institute proceedings in the Probate Court to test the question as to whether or not he ought to be removed: and if complainants succeed in getting a receiver appointed under this bill, it will not be for their interest to do so; and thus if the Court of Chancery can exercise jurisdiction and appoint a receiver under this bill,

Daniel J. may be deprived of his rights as guardian, without any possibility of testing such rights.

We submit there is no jurisdiction in the Circuit Court to entertain this bill. And hence;

II. We are entitled to the writ of prohibition. The Constitution gives the Supreme Court general supervisory control of all *inferior* courts. Sec. 3382 Comp. L. authorizes the Supreme Court to issue writs of prohibition.

Without the statute, it would have the power under the above provisions of the Constitution. Sec. 5326 Compiled Laws fixes practice as to the writ.

As to general nature of the writ and when it issues:— 5 *Bac. Abr.* 647, 663; 6 *Com. Dig.* 104. That it runs to the Court of Chancery:—5 *Bac. Abr.* 666 ; *Lord Raym.* 531; 6 *Com. Dig.* 106, 604; 3 *Bl. Com.* 112, 113; 23 *Ala.* 44; 25 *Ala.* 100.

That the Court of Chancery is an inferior court within the meaning of our Constitution and statutes :— *Quimbo Appo v. The People*, 20 *N. Y.* 531; 23 *Ala.* 94.

That there may be a remedy by appeal (or writ of error) is immaterial. The remedy must be adequate; and when there is not a direct appeal the remedy is not adequate:—23 *Ala.* 94; 25 *Ala.* 100; 4 *Rob.* 50.

*T. Romeyn* and *G. V. N. Lothrop*, for respondent:

I. This is a motion for a writ of prohibition to be directed to the Court of Chancery in a matter where *full ultimate relief* can be secured *by appeal* to this Court.

There is no ground for interference on the basis of irretrievable injury.

It is submitted that the case is not, in any view of it, one calling for the interference of this Court by this writ.

1. The allowance of this writ is discretionary.

2. No irreparable injury will arise, for a receiver will be responsible to the Court of Chancery, and will be under its control.

3. Full relief can be secured *by appeal,* and it is submitted that there is no more reason for this extraordinary interference in this case than in any other where there is an honest doubt as to the bill making a proper case for Chancery.

4. It is respectfully submitted, that it is *inexpedient* to grant this writ in such a case as this, of doubtful merits at best on the relators' side, and before the Circuit Judge has decided on his own jurisdiction.

II. This application must be decided *according to the facts set forth in the bill of complaint* in Chancery, and the statements of the answer can not be allowed to contradict them.

III. If it be assumed that Chancery has jurisdiction over a guardian like the relator, then a plain case is made against him by the bill, in its charges of incompetency, neglect and mismanagement.

IV. Chancery has *general* jurisdiction over guardians, to *supervise, direct and remove* them, viewing them as trustees. See *Jeremy Eq.* 222 *and cases there cited; Story Eq. Juris.* §§ 827, 828, 836; 1 *Madd. Ch.* 578; 1 *Beasley N. J.* 297; 2 *Johns. Ch.* 439; 1 *Johns. Ch.* 100; 1 *P. Wms.* 704; *Willard Eq.* 624.

V. There is *no reason* in the nature of the guardianship *over non compotes in this country for distinguishing* between such guardians and other guardians, as to the control of Chancery over them.

1. It is claimed by the relators that the jurisdiction over idiots and lunatics in England is special, and is confided to the Chancellor *as such,* and that, as a consequence, the Court of Chancery here has no jurisdiction over the committees or guardians. To this we answer:

First. Conceding for the argument's sake, that the *first* proceedings in the case of *idiots* and *lunatics* required special warrant or commission from the King, this was not so in regard to a person who had become enfeebled

by *old age*, and become so weak in mind as to be unable to manage his affairs.

Here there was and is an *original* inherent jurisdiction and duty in Chancery. See *Barker's case*, 2 *Johns. Ch.* 232, and the authorities cited in it.

Second. But conceding further, that this is to be assimilated to the case of *lunatics*, we then insist that the Court of Chancery in England, *after the appointment of the committees*, had full control over them, as over any other persons charged with *fiduciary* duties: — *Story Eq. Juris.* §§ 1336 *and notes*, 1362 *to* 1365; *Jeremy Eq.* 211; 2 *Madd. Ch.* 724–5; *Adams' Eq.* 90 *to* 92, 654–5, (*top paging*); *Shelf. on Lunatics*, 16, 17, 167; 1 *Ves.* 463; 3 *Ves.* 2; 19 *Ves.* 280.

Third. The control in England over such committees was, *in any view* of the authorities, *an equitable* one *administered by Chancery.* Even if subject then to some modifications, such was its *general* character. And as we have in this country none of such special provisions and enactments, such control must either be exercised by the Court of Chancery, through its general powers, or there must be a failure of justice.

Fourth. That the Circuit Court in Chancery can not *appoint* the guardian in the *first* instance affords no argument against its power to *remove* or *control* him. Otherwise we must deny its power over executors, administrators and testamentary guardians.

2. The argument that the jurisdiction of the *Probate Court* is *exclusive*, because that Court alone has power to *appoint* a guardian, is unsound. Because,

First: It is not conceded that such *is* the fact in the case of a person imbecile from old age.

Second: It proves too much, for it would divest Chancery of all control over executors, testamentary guardians and other *quasi* trustees *not appointed* by itself.

3. It is respectfully suggested that *on principle*, the

attempt to discriminate between the *control* of Chancery over *this* guardian and *other* guardians of person and estate is utterly without reason or expediency.

The defendant, Joseph Campau, is *confessedly non compos*, and his estate is *actually* in the hands and management of a guardian, as much so as if he were an infant.

The defects in the modes of procedure in the Probate Court, and in its jurisdiction and functions, to give full protection, and to administer adequate relief, are just as great in this case as in any other case of guardianship.

This jurisdiction is vested in the Probate Court *in the same manner* by statute, as in the case of infants. The powers of the guardians and the control of that Court over them in both cases are similar. And it is utterly impossible to deny the jurisdiction in Chancery in *this* case, on the ground of the Probate Court having it exclusively, without doing so on principles that will apply *equally to guardians of infants, and to executors and administrators.*

And as to this, see in addition to former cases:— *Wal. Ch.* 314; *Har. Ch.* 206, 259; 39 *N. H.* 410; 5 *Mason,* 95.

It is most earnestly contended that the refusal of jurisdiction to Chancery in this class of cases is pregnant with danger.

The Court of Probate is a special court, with limited powers. It can not enlarge the functions of the guardian, as declared by statute. As to this, see 2 Comp. Laws, pp. 972, 973.

Suppose there be a necessity for *special* powers, as in *Willoughby's case,* 11 *Paige,* 257, and in *Heeney's case,* 2 *Barb. Ch.* 327.

Again, suppose that a guardian is wasting the estate, neglecting the ward, &c., and that the Judge of Probate orders his removal. An appeal is taken, and the bond given, as required by C. L. § 3632. Then under § 3640, all proceedings are *stayed,* until the appeal be decided.

Perhaps the Circuit Court may not sit for a year, and

the guardian may go on with his misconduct and waste. Is the Court of Chancery powerless?

VI. But suppose it be conceded that the Court of Chancery has no power *to appoint or remove* a guardian. The bill shows that proceedings have been taken *in other courts* to appoint a general guardian, and that the special guardian protracts and delays the termination of these, and in the meantime is neglecting his duties and abusing his trust. It is submitted that a case is made for the intervention of equity *to enjoin him and appoint a receiver*.

The bill shows a clear case for the appointment of a receiver. The power of the Court of Chancery to grant this relief, while the questions involved are in litigation in *another* court, is unquestionable. See *Shelf. on Lunatics,* *p.* 313; *Story Eq.* §§ 827, 828, 829, 836, and 3 *Dan. Ch. Pr. p.* 1949 to 1971, where the whole doctrine is exhibited. See especially pages 1956, 1958, 1961, 1962, 1963, 1969.

CAMPBELL J.:

An application is made to this Court for a writ of prohibition, to restrain the Circuit Court for the county of Wayne in Chancery, from entertaining jurisdiction of a bill filed for relief touching the affairs and estate of Joseph Campau, alleged to be *non compos mentis.*

It appears that the Probate Court appointed a guardian, and that on appeal the order was reversed and another guardian appointed, and the cause was remanded to have security given by the new .appointee. It is alleged that a writ of error has been sued out, and that the Probate Court regards this writ as a supersedeas. A special guardian having been appointed by the Probate Court, and an application for his removal having been instituted and entertained, he has appealed to the Circuit Court from the order requiring him to answer.

A bill is now filed setting up this complicated litigation, alleging also the threats of the special guardian to prolong

and further complicate it, and also very gross misbehavior on his part, and asking for an injunction and receiver, for an accounting, and for the removal of the special guardian, and for the appointment of a general guardian.

As the writ of prohibition, if issuable, is only for excess of jurisdiction, it is not material, on this motion, whether the facts charged are true or not.

There seems to be no power to issue this writ to restrain any action which can be disposed of by appeal, or other ordinary method of review. And as all decrees upon the merits are open to review on appeal in equity, we are only concerned with the application for relief *pendente lite* by injunction and receiver.

It is unnecessary and improper, therefore, in such a proceeding, to determine the questions which will thus be brought up, any further than may be required to settle the preliminary rights. I am very strongly inclined to the opinion that under our Probate system the Court of Chancery has only jurisdiction in those cases in which an adequate remedy does not exist in the Probate Court.

That there are some such cases there is no doubt, but there is as little doubt that a very large portion of the old equity jurisdiction has been vested in the Courts of Probate.

The facts alleged in the bill show that there is a contest for possession between a general guardian appointed on appeal from the Probate Court, who has not been allowed to qualify, and a special guardian who has by an appeal suspended proceedings for his own removal, who threatens further litigation, and who is charged with gross fault. The Probate Court can make no effectual order settling this difficulty which is not liable to be suspended in the same way, and can, therefore, use no effectual means to prevent at once any abuse or mismanagement of the trust. The facts charged amount to an alleged abuse of legal process, attended by danger of damage to the

person and property under guardianship. Courts of equity have always had power to preserve property in peril during litigation, from loss which could not be repaired by ordinary means: — 3 *Dan. Ch. Pr.* 1961-2. And in a case like the present, where disputes exist concerning the rights of both guardians, and those disputes are alleged to be delayed of settlement in such a way as to create constant difficulty and litigation, there can be no doubt of the power of equity to take charge of the fund and manage it until some person obtains a legal right to retain it.

We can not assume that the Court of Chancery will not decide fairly and legally in the matter, nor can we by prohibition control that Court if acting within its jurisdiction. The writ should be denied.

The other Justices concurred.