## MARIAM R. MORFORD v. CHARLES DIEFFENBACKER.

*Amendment of declaration as to plaintiff—Presumption of probate jurisdiction—Guardian's petition for probate—Fraud—Conditional devise for support.*

1. A declaration in the name of a guardian was amended after plea by making the ward the plaintiff, suing by her next friend, who was the guardian aforesaid.  The issue was in no way changed, however. *Held*, that the amendment was allowable; and it was not material that no opportunity was given to plead anew if leave was not asked or reason apparent therefor.

2. The probate courts of Michigan have, in probate matters, a general, and, for the most part, exclusive jurisdiction; and their orders can not be attacked collaterally upon any assumption that evidence was

| 54 | 593 |
| 79 | 639 |

| 54 | 593 |
| 84 | 524 |

| 54 | 593 |
| 86 | 492 |

| 54 | 593 |
| 96 | 440 |

| 54 | 593 |
| 119 | 673 |

| 54 | 593 |
| 152 | 37 |

| 54 | 593 |
| 156 | 2399 |

wanting to support jurisdictional allegations; their action, when properly invoked, is presumed to be rightful.

3. A guardian has such an interest as will entitle him to petition for the probate of a will in his ward's favor; and the probate, if allowed, cannot be collaterally assailed for the want of a showing that he had proved the allegations on which his right to petition was based.

4. A devise of property for the devisee's natural life, with authority to dispose of enough for his support, if the use of it should be insufficient, gives only a life estate with conditional power of disposal. And so long as any money bequeathed by the will is available for the devisee's support, the real property cannot be sold for that purpose.

5. A sale for the nominal purpose of raising money but for a grossly inadequate sum and to a person who has no means, is apparently fraudulent.

6. A fund provided for the " support " of a person cannot be appropriated to the building or completion of a dwelling place.

Error to Lenawee (Steere, J.)   June 24.—Sept. 23.

EJECTMENT.   Defendant brings error.   Affirmed.

*Westerman & Westerman* and *Millard, Weaver & Weaver* for appellant.

*Bean & Underwood* for appellee.

COOLEY, C. J.   Ejectment.   The suit was begun by the filing of a declaration in the name of John Armstrong as guardian of Mariam R. Morford, an infant, as plaintiff, and counting on the seizin of said plaintiff "as such guardian and in the right of said Mariam Morford," in the west half of the southwest quarter of the southwest quarter of section five, and the west twenty-five acres of the west half of the northwest quarter of section eight in township six south of range three east.   There was also a count in which an undivided half of the west fifty acres of the west half of the northwest quarter of section eight was claimed.

After the defendant had appeared and filed a plea to the merits, the infant, by her guardian, presented a petition in which it was stated that she was nine years of age; that she was entitled to recover certain real estate described in the declaration; and she prayed that Armstrong, her guardian,

might be appointed her next friend to appear for her in said suit, and that the declaration in the cause might be amended by striking out whenever occurs the name of the plaintiff John Armstrong as guardian of Mariam R. Morford, and substituting in place thereof Mariam R. Morford, an infant under the age of twenty-one years, by John Armstrong, her next friend. This motion was opposed by defendant, but was granted, and it was ordered that the cause proceed the same as though it had been commenced in the name of Mariam R. Morford, by John Armstrong, her next friend.

When the cause came on for trial the defendant objected to the trial on the grounds :

1. That there was no issue formed between the parties therein.

2. That the court had no jurisdiction to try the same, there being no proceedings by which the defendant had been legally summoned or brought into court to answer this plaintiff.

3. That no plea had been filed by the defendant to the declaration of this plaintiff.

This objection merely raised the question of the power of the court to allow the amendment which had been ordered. The court overruled it, and directed the trial to proceed.

In tracing title in the plaintiff it became necessary to show the probate in Michigan of the will of William Dieffenbacker, formerly of the county of Livingston in the state of New York, which bore date March 12, 1868, and was probated in the surrogate's court of that county in the following May. For this purpose the records of the probate court of Lenawee county were put in evidence, from which it appeared that on January 16, 1882, John Armstrong presented to that court a petition reciting the death of said William Dieffenbacker and the probate of his will in the state of New York; that at the time of his death he was seized of real estate situate in said county of Lenawee, which by the will was devised to Henry Dieffenbacker and Elizabeth Dieffenbacker for the term of their natural lives, and at their deaths to the children of said Henry in fee; that said Henry had died leaving two children, Elva and Charles; that said Elva had since deceased,

leaving a last will, by which an interest in said real estate was devised to Mariam R. Morford, an infant, of whom petitioner was guardian. And the petition prayed that said will of William Dieffenbacker be admitted to probate in Lenawee county, and letters for the execution of the same granted.

The petition was not verified by oath, and the record shows no proof made of Armstrong's guardianship, but an order was made for hearing upon it, and notice of hearing was duly published. On the day appointed for hearing, the will with the New York probate was presented, and no objection being made, an order admitting it to probate in Lenawee county was duly entered.

When these proceedings were offered in evidence on this trial, the defendant objected that they were invalid because it did not appear that John Armstrong was in any manner interested in the estate of William Dieffenbacker, or had any right to move in the probate of the will. He stated in his petition that he was guardian to Mariam R. Morford, but it was claimed he made no proof of the fact either at the time of presenting the petition or on the day of hearing. He did not even state where he was appointed such guardian. The court overruled this objection, and the defendant excepted.

The will of Elva Dieffenbacker bears date February 21, 1880, and its bequests are in the following words:

*First.* I desire that all my just debts and funeral expenses be paid by my executor out of my estate.

*Second.* I hereby give and devise unto my cousin, Mariam R. Morford, my organ now in my possession, the same being the only organ now in my possession.

*Third.* I hereby give and devise to my mother, Elizabeth Dieffenbacker, all the rest, residue and remainder of my property, of whatever nature, which I shall die seized of, for and during her natural life; and in case the use of said property shall be insufficient for her support, then and in such case I hereby authorize her to dispose of such of said property and such amounts thereof as shall be sufficient for her support; and whatever shall remain at her death I hereby give, devise and bequeath unto my said cousin, Mariam R. Morford and to her and her heirs forever.

The facts in the case, and the conclusions of law thereon, are found by the circuit judge as follows:

### FINDINGS OF FACTS.

*First.* William Dieffenbacker, the grandfather of the above-named defendant, died at Geneseo, Livingston county, state of New York, on the 11th day of May, A. D. 1868, seized in fee-simple of the west half of the southwest quarter of section 5, and the west 50 acres of the west half of northwest quarter of section 8, all in town 6 south, of range 3 east, in the township of Adrian, county of Lenawee and state of Michigan, which above-described property is the subject-matter of this suit.

*Second.* That said William Dieffenbacker died testate, and his last will and testament, after being first proved and allowed by the surrogate court of the said county of Livingston, N. Y., was proved as a foreign will and admitted to probate by the probate court of Lenawee county, State of Michigan, upon the petition of John Armstrong, mentioned as the next friend of the plaintiff in the above-entitled cause, as more fully and at large appears by the files and records of said probate court in the matter of the estate of said William Dieffenbacker, which said files and records are in evidence in this cause, and are hereby made a part of these findings. By the terms of which last will and testament the said William Dieffenbacker gave and bequeathed to his son, Henry Dieffenbacker, and wife Elizabeth, the use, control and interest of the land above described, during their life-time, or the life-time of either of them; and at their death, or the death of both said Henry and Elizabeth, said land was to go to the children of said Henry Dieffenbacker, or their heirs, forever.

*Third.* That the children of said Henry and Elizabeth Dieffenbacker were Elva E. Dieffenbacker and Charles Dieffenbacker, the defendant in the above-entitled cause.

*Fourth.* That the said Henry and Elizabeth Dieffenbacker held the possession of said lands and premises under and by virtue of said will, and occupied the same during their respective lives, residing in what was designated as the old house, on the east half of the 50 acres before described; and, after the death of said Henry, the said Elva and her mother Elizabeth continued to live in and occupy said old house, in which house the said Elva died.

*Fifth.* That the said Henry died about the year A. D. 1870. The said Elva E. died May 4th, 1880, and the said

Elizabeth died August 20th, 1881, or about fifteen months after the death of said Elva.

*Sixth.* That subsequent to the death of said Henry, and on July 22d, 1879, the said defendant Charles Dieffenbacker and his wife conveyed, by quitclaim deed, to the said Elva Dieffenbacker all their interest in the 20 acres of said property lying north of the highway, described as west half of south-west quarter of south-west quarter section 5, town 6 south of range 3 east, and on the same day the said Elizabeth Dieffenbacker also conveyed to said Elva, by her quitclaim deed, all her life-interest in said 20 acres.

*Seventh.* That the said Elva died seized, in fee-simple absolute, of the above-described 20 acres, and of an undivided one-half ($\frac{1}{2}$) interest in the 50 acres before described, her brother Charles, the above-named defendant, being seized of the other undivided one-half of said 50 acres, the whole being subject to the life-interest of the said Elizabeth Dieffenbacker, their mother.

*Eighth.* That the said Elva E. Dieffenbacker died on May 4th, 1880, as aforesaid, testate, leaving a last will and testament, in which she appointed Linus Van Deusen her executor, he accepting and entering upon that trust; which said last will was admitted to probate in the probate court of Lenawee county, Michigan, on the 21st day of June, A. D. 1880, as more fully appears by the files and records of said probate court in the matter of the estate of Elva Dieffenbacker, deceased (which said files and records are in evidence in this cause and are hereby made a part of these findings); by the terms of which said will, after providing for the payment of all her just debts and funeral expenses by her executor, and after giving her organ to her cousin, Mariam R. Morford, the plaintiff herein, she gave her mother a life estate in her property, with a contingent power of sale, as follows : " I give and devise to my mother, Elizabeth Dieffenbacker, all the rest, residue and remainder of my property of which I shall die seized, for and during her natural life. And in case the use of said property shall be insufficient for her support, then and in such case I hereby authorize her to dispose of such of said property, and such amounts thereof, as shall be sufficient for her support, and what shall remain at her death I hereby give, devise and bequeath to my said cousin, Mariam R. Morford, and to her heirs forever."

*Ninth.* That about two years before her death, the said Elva received from an eastern relative a legacy amounting to over $3000, and from that time to her death supported her

mother, Elizabeth, for the most part, providing her with an abundance of clothing and other comforts, and had contracted in writing for the construction of a new house on the 20 acres aforesaid, which she owned in fee-simple, at an expense of $1100, upon which she had paid $850; which said house was completed under said contract after her death, and into which said Elizabeth Dieffenbacker moved in July, 1880, with Mariam R. Morford, the plaintiff herein, and in which the said Elizabeth continued to reside until her death on August 2d, 1881.

*Tenth.* That on December 21st, 1880, and about seven and a half months after the death of the said Elva, the said Elizabeth Dieffenbacker gave to her son, Charles Dieffenbacker, the defendant herein, a quitclaim deed of the west twenty-five acres of the fifty acres before described, the actual consideration therefor being $250, which deed is in evidence in this case, is marked Defendant's Exhibit A, and is hereby made a part of these findings.

*Eleventh.* That at the time of the giving of said deed there was on hand of the personal property of the estate of said Elva a horse and buggy, two cows, two steers, wheat, hay, corn, potatoes and other chattels of several hundred dollars value. That said Elizabeth had also received from the estate of said Elva the sum of $385 in cash, by virtue of a certificate of deposit of money in bank payable to said Elva, upon which certificate the said Elizabeth had indorsed the said Elva's name, appropriating the same, and making no account thereof to the estate of said Elva, paying, however, several debts of the said Elva's and of her own, including the $250 balance upon the contract for the new house, none of which debts were proved or allowed by the probate court as debts or claims in the matter of the estate of said Elva.

*Twelfth.* That at the time of giving the said deed of the west twenty-five acres aforesaid there was in fact no necessity of the sale of any portion of the estate of said Elva for the support of said Elizabeth, but that the money she had received and use of the said property were amply sufficient therefor.

*Thirteenth.* That on June 4th, 1881, thirteen months after the death of said Elva, and about one and a half months before her own death, the said Elizabeth conveyed by a warranty deed, for the expressed consideration of $1500, to the said Charles, her son, defendant herein, the twenty acres north of the highway, as heretofore described, and upon which she then lived, it being stated in the deed aforesaid that the sale was necessary for her support; the said Charles paying

her upon the same the sum of $700, that being the amount for which he was able to mortgage said property, he verbally agreeing, as part of the consideration, to support her for the balance of her life; and after mortgaging said property giving her a life-lease of the same, which said deed is in evidence in this cause, is marked Defendant's Exhibit B, and is hereby made a part of these findings.

*Fourteenth.* That the said Elizabeth, at the time of the death of said Elva, was supplied with an abundance of clothing and bought but little thereafter. That she had lived for many years on a farm, was a woman of frugal habits and accustomed to a simple mode of life, in keeping with her surroundings. That she had for several years been affected with pulmonary consumption, and died of that disease; that she was, till within seven or eight weeks of her death, up and around, capable of going out to visit and on business, and of looking after and doing a portion of her own work, though in delicate health, under the care of a physician, and needing help most of the time, though having help less than one-half of the time.

*Fifteenth.* That the proceeds of the farm, exclusive of the house and orchard, were sufficient to supply the said Elizabeth with staple provisions and common groceries, and that the same would have rented for at least $150 per year; that the said Elizabeth received from the estate of said Elva, during the time she survived her, cash as follows:

From certificate of deposit.................................... $385 00
From executor of estate,........................................ 58 00
Charles, use 12 acres,.......................................... 36 00
                                                              ————
                                                               $479 00

That there were in the hands of the executor, at the time of her death, belonging to Elva's estate, $165.

*Sixteenth.* That the legitimate cash expenditures during the time the said Elizabeth survived the said Elva, for her comfortable support, would not and did not exceed the sum of five hundred dollars ($500), including hired help and physician fees, the use and production of the farm being considered.

*Seventeenth.* That there was a sufficient for the comfortable support and maintenance of the said Elizabeth out of the money, personal property and rents and profits of the realty, without conveying said real estate away; and that as a matter of fact the contingency which would have made the power of defendant in the will of said Elva operative, did not arise.

*Eighteenth.* That the said Charles Dieffenbacker was at the

time of the conveying said property to him insolvent and without means to purchase, and the only consideration in money paid by him for the same was the amount he was able to mortgage said property for.

*Nineteenth.* That the said Charles now claims title to and holds possession of said real estate, to-wit, the twenty acre piece lying north of the road, and heretofore more particularly described, and the twenty-five acres of the fifty-eight acres heretofore described, and was at the time of the commencement of this suit withholding the possession of said premises under and by virtue of said deeds, marked Defendant's Exhibits A and B. That the said Charles lived with his mother at the time the second deed (Exhibit B) was made, and continued so to live until the time of her death; that prior to that time he lived near her, and was well acquainted with her circumstances, and all the various facts set forth in these proceedings.

*Twentieth.* That it does not satisfactorily appear that the said defendant, before the commencement of this suit, ousted the plaintiff from the use and enjoyment of the east twenty-five acres of the west fifty acres of the west half of the northwest quarter of section eight, township and range aforesaid; that a fair market valuation of the twenty acres north of the road would be $16, and of the fifty acres $45 per acre.

*Twenty-first.* The files, records and all exhibits offered in evidence in this case, and allowed, are hereby especially referred to and made a part of these findings.

### CONCLUSIONS OF LAW.

By the terms of the will of Elva Dieffenbacker, her mother Elizabeth had a life-interest in her estate, coupled with a power to sell upon the happening of a contingency. This is not a case of power to sell at discretion, which would create a fee; but the power depending upon a contingency, it is incumbent upon those claiming title by the exercise of the power to show that the power was well executed, and that the contingency actually, as a matter of fact, had arisen at the time the power was exercised. Upon them, the defendants, is the burden of proof to show that fact.

It cannot be presumed from the terms of the will that any such contingency could arise, empowering sale of realty, while there were money, goods or chattels of said estate on hand; and an insufficiency of money, goods and chattels to comfort-

ably support said Elizabeth was a condition precedent to sale of real estate.

It is argued with much force and insisted by counsel that credit should be given for the money expended by said Elizabeth for the completion of the house, for the funeral expenses of Elva, for a monument, and for other apparently legitimate debts and charges against the estate of said Elva, and that, should credit be so given, it would appear from the evidence that the contingency creating power to dispose had arisen ; but these, if legitimate, should have been proved and allowed in the probate court. By the express terms of the will the power and authority to pay these debts, if just, was conferred upon the executor, as such. It was the expressed will of the testator that this power should only be exercised by that officer *as such*. If Elizabeth Dieffenbacker took it upon herself, in the face of that provision in the will, to administer the estate of her daughter, she certainly did it at her peril and the peril of those claiming under her, and the court is not warranted in sustaining the action, and allowing accounts which have never been presented to the proper tribunal for adjudication.

It is claimed that as money left in bank by Elva belonged to her estate, and was drawn without authority of her representative by an unauthorized endorsement, there was no valid payment of the same; that the representative of Elva could still demand and recover the same, and the said Elizabeth would not be obligated to use such money for her support before she would be authorized to sell; but surely, if the said Elizabeth, by requesting and appropriating said certificate of deposit, kept the same from the knowledge of the executor, and deprived the estate thereof, at this time, she and those claiming under her would be estopped from claiming advantage by her wrong.

In the event of the happening of the contingency creating the power to sell real estate, the authority would only arise to use so much as was reasonably necessary for her comfortable support, and the sale must be made for that purpose, and with that view only. Even though the contingency might have existed, if the sale was made for other purposes, it would be ultra vires and void. Unfortunately, the circumstances surrounding this case lead to the impression that a purpose to subvert the provisions of the will governed the conduct of the parties to the conveyance in question, rather than an honest purpose to properly and judiciously execute the power.

The sales, made as they were by Elizabeth Dieffenbacker to her son Charles, a person without means and involved, who never paid anything upon the same except what he could raise by mortgage on the property bought; the small consideration; the sale of the twenty acres with the house where she lived while a smaller and much less valuable and useful tract remained,—taint the transaction with a lack of honest motive not tending to substantiate the claim that her necessities created the contingency authorizing the conveyance.

No ouster is considered to have been shown as to the east twenty-five acres of the fifty acres in question, and as to that the plaintiff cannot recover the same in this action. It is therefore considered, upon the facts proved and the law found by the court, that the said plaintiff is entitled to the premises described in the third count of her declaration, viz., the west half of southwest quarter of southwest quarter of section 5, town and range aforesaid, consisting of 20 acres ; and under the fourth (4) count in said declaration, to an undivided one-half interest in the property described therein, to wit, an undivided one-half interest in the west twenty-five acres of the west half of northwest quarter section eight (8), town and range aforesaid.

Let a judgment be rendered accordingly."

This statement of the case will be sufficient for the purposes of an examination of the legal questions.

I. Defendant contends that the court had no power to permit an amendment of the declaration which substituted one party plaintiff for another. This it is said made a new suit of it; the defendant has never pleaded in that suit, but he was compelled, notwithstanding his objection, to proceed to the trial of a case in which, if there was any issue; it was one made by the court itself, without his consent and against his remonstrance. The statute of amendments is not broad enough to authorize a change of parties and the substitution of a new action by another plaintiff.

This contention is plausible, but we think not sound. In *Kimball &c. Co. v. Vroman* 35 Mich. 310, a declaration against "William A. Tomlinson as president for the time-being, of the Kimball & Austin Manufacturing Company, a company organized and existing under and by virtue of the

laws of said State, and doing business at Kalamazoo in the county aforesaid," was allowed to be amended on the trial by striking out the name of Tomlinson and the designation of his official character, leaving the declaration to stand as one against the company, as defendant. This may be said to have been a change of the party defendant; but the purpose had been to charge the company; the declaration counted on an obligation of the company, and the amendment did not change the issue which the parties had expected to try. In *Kinney v. Harrett* 46 Mich. 87, an error had been committed in planting the suit of precisely the same character with that committed in this case; but it was said that as the title claimed by the wards was set out in the declaration, and the guardian was only a nominal party, the court in its discretion might have permitted an amendment. We think so still.

The defendant complains that he had no opportunity to plead to the amended declaration. But the circuit court was not informed that he desired any such opportunity, nor is there any reason to suppose he did. There is no pretense or suggestion now that any different issue was desired than the one made by the plea before filed, and on which trial was had, and no ground for any supposition that the defendant was deprived of any substantial right by either the amendment or the order to proceed to trial.

II. The objection to the probate of the will of William Dieffenbacker in the county of Lenawee is also, we think, without merit. The objection assails the probate collaterally on the ground of the want of interest in Armstrong, the petitioner for the probate. It appears, however, from the petition which Armstrong presented, that he had an interest, for he represents himself as being guardian of this plaintiff, who was an infant, and claimed title to land through the will. If the fact was as he represented, his interest was unquestionable. *Mower's Appeal* 48 Mich. 441. This seems to be conceded; and the objection is, not that he did not show his interest by his allegations, but that it does not appear that he proved it. To this the sufficient reply is that the contrary does not appear.

The probate courts of this State are courts of general, and for the most part of exclusive, jurisdiction in probate matters: *People v. Wayne Circuit Court* 11 Mich. 393; *Woods v. Monroe* 17 Mich. 238; *Church v. Holcomb* 45 Mich. 29 ; and their orders and decrees are not to be collaterally attacked on any assumption that they may have exercised their jurisdiction without evidence to support the allegations.   All presumptions are that their action, when properly invoked, is rightful;: and a contrary presumption would be particularly unreasonable· in a case like the present, where, if Armstrong was guardian as he claimed to be, it is highly probable he was appointed such guardian by this very court, so that the record evidence- of the fact would be before the judge to whom the petition· for probate was presented, and who in that case would take· judicial notice of the fact.   But if the appointment had been; made elsewhere, there is nothing in this record to show that proof of it was not duly made, and it is consistent with all that appears that the allegations of the petition were duly supported.   The action of the probate judge assumed that he· was satisfied of their truth ; and when his action is collaterally assailed, the presumption in support of it must be that he· was satisfied in a legal way and by proper proof.

The case differs essentially from *Besançon v. Brownson* 39· Mich. 388, for in that case there was no showing of interest by the petition.   And it may not be improper to remark,. though the fact may have no legal significance, that the party now setting up the Michigan probate is one whose interest under it is not disputed, and who, so far as such a thing is possible, may be said to adopt and sanction, as she certainly relies upon, what the party who unquestionably is now rightfully acting for her, assumed then to do.

III.  The principal questions in the case arise on the will of Elva Dieffenbacker, who, after providing for the payment of debts and funeral expenses and making a small specific gift, gave to her mother Elizabeth Dieffenbacker, under whom the defendant claims, all the rest, residue and remainder of her property, of whatever nature, for and during her natural life ; and in case the use of the property should be insufficient for her·

support, then and in that case authorized her to dispose of such and so much of the property as should be sufficient for that purpose. The position is taken that by this gift Elizabeth Dieffenbacker took a fee in the lands; but this we do not concur in. She had a life-estate only, with conditional power of disposal. *Terry v. Wiggins* 47 N. Y. 512; *Minot v. Prescott* 14 Mass. 496.

The power to dispose of the property was conditioned upon the use thereof being insufficient for the beneficiary's support. The plaintiff contends that the general rule that real property is only to be resorted to when the personalty is exhausted is applicable to such a gift; and therefore the contingency in which the power to dispose of the real estate might be exercised never occurred; it appearing that the executor of Elva Dieffenbacker had money on hand applicable to the support of Mrs. Dieffenbacker, both at the time when she assumed to execute the power of sale, and also at the time of her death. It is also urged for the plaintiff that Mrs. Dieffenbacker could not be the judge of the necessity of making sale of the land, but that the necessity must appear to have existed as a fact. *Minot v. Prescott* 14 Mass. 496; *Stevens v. Winship* 1 Pick. 317; *Larned v. Bridge* 17 Pick. 339; *Paine v. Barnes* 100 Mass. 470; *Hull v. Culver* 34 Conn. 403; *Henderson v. Blackburn* 104 Ill. 227; *Warren v. Webb* 68 Me. 133. On the other hand it is contended for the defendant that Mrs. Dieffenbacker under the will had no more and no different authority to dispose of the personalty than of the realty; the condition was single and applied equally to both; she was absolutely entitled to the *use* of both, and to dispose of the property, real as much as personal, when the use should prove insufficient. And this seems to be warranted by the phraseology of the will.

But whatever might be the construction of the will if the personalty were anything besides money, it would be an unreasonable and wholly unwarranted construction that would justify an exercise of the power to sell, for the purpose of raising money, when there was already money on hand with which the object of the testator's bounty could be accom-

plished. It was her manifest purpose to preserve the body of her estate intact for this plaintiff, unless a sale should be necessary for her mother's support; and the only purpose that could exist for making any sale would be to produce a fund which could be made use of for such support. If a fund already existed, unappropriated and uninvested, as apparently was the case here, the creation of a further fund, by a sale of either lands or chattels, would, if within the terms of the power, be an abuse of it. But we do not think it could be held to be within its terms. And Mrs. Dieffenbacker apparently must herself have thought she was at liberty to make use of any money on hand, for she proceeded to draw the money from the bank and make use of it immediately after her daughter's death; a lawless act, in so far as it was accomplished by the unwarranted use of her daughter's name in indorsing the certificate, but not otherwise unwarranted if the money was needed for her support.

But we also think the court had evidence tending to show that the conveyances made by Mrs. Dieffenbacker to defendant were made in fraud of the plaintiff's rights, and by a perversion of the power given by the will instead of being in bona fide execution of it. The defendant had no means to buy lands with, and was not a person to be looked to as a purchaser if a sale for. the raising of money was in contemplation; and a sale to a person without means when ready money was the nominal purpose, must necessarily be suspicious. But the consideration in one case, at least, was grossly inadequate; and so it was in the other also, unless much importance is attached to the life-lease which was given back. But the transaction in that case looks very much like one fixed up for a purpose different from the one professed.

Complaint is made that the judge refused to find that the completion of an unfinished house which was begun by Elva, and was her mother's home after Elva's death, was a proper expenditure for the mother's support. But the argument for such an expenditure would hold good in support of an expenditure for the erection of an entirely new building had Elva left none, or in justification of any particular improve-

ment upon the land which would be calculated to make it more productive. It would apparently have been a very proper and desirable thing for Elva to have provided for the completion of the unfinished house for her mother's occupation, but she failed to do so. She merely provided a fund for her mother's support; and the building of a house, in whole or in part, cannot be considered a part of the support of the person who is to occupy it.

No errors appear in the case, and the
Judgment must be affirmed.

The other Justices concurred.