CHASE H. DICKINSON v. GEORGE L. SEAVER ET AL.

*Probate jurisdiction of claims against estates—Laches in complaining of fraud against claimants—Taxation of costs—Printing, stenographer's, register's and witness fees.*

A decree by a federal court cannot affect strangers to the record, or interfere with the regular probate of an estate in a State court which has jurisdiction.

Under the probate system of Michigan, estates must be settled and claims proved in the probate court. Whatever may be done with the final balance where a will has been previously probated at a foreign domicile, the estate must be administered under the probate laws of the State to the time of distribution.

No administration of an estate is extra-territorial, and no foreign proof can be enforced without re-allowance; a foreign judgment may have great force or even be conclusive as evidence, but it cannot be enforced as a judgment outside of the jurisdiction in which it is given, without being established in new legal proceedings.

The probate court is the only court that has any such jurisdiction *in rem* as will enable it to reach persons out of the State or call in all creditors; the circuit court has no power in equity to act as a substitute for the probate court in this way, and unless it has authority to deal with a case through the parties actually before it, cannot deal at all with it.

Where the creditors of an estate have notice that its owner has lately held a mortgage which has only partly matured, they should inquire into the matter in the probate court if they wish to have it applied to their benefit; and an unexplained delay of fifteen years in doing so is fatal to any complaint of it as a fraudulent mortgage.

A right of action for fraud is not assignable and equity will not permit one to buy up stale claims and then seek to establish frauds committed against his assignors.

In taxing costs for printing, the clerk should limit the allowance to the customary rate for such work unless satisfied that more has in good faith been paid or a greater liability incurred. And counsel have a right to have the printing done where it will be convenient to look after the proofs.

A claim for register's fees in the lower court must be itemized before allowing it in taxing costs.

Costs for stenographer's fees cannot include anything for taking the testimony of the losing party.

Witness fees to parties are not covered by the ordinary affidavit of disbursements attached to a bill of costs; a special affidavit must show that they attended as witnesses and traveled, as charged, for that purpose, and not to assist as parties, by counsel or otherwise, in the conduct of the case.

Where a re-taxation of costs is allowed on motion of a party complaining that too much was allowed, the clerk cannot tax at a higher amount even though he might have been justified in doing so to begin with.

Appeal from Van Buren. Submitted October 26. Decided November 10.

BILL for setting aside an award and for an accounting and marshalling of assets. Defendants appeal. Reversed and bill dismissed.

*Norris & Uhl* for complainant.

*Geer & Williams, A. C. Baldwin* and *Ashley Pond* for defendants. An executor or an administrator has no authority beyond the jurisdiction in which he is appointed: *Isham v. Gibbons* 1 Brad. 69 ; *Parsons v. Lyman* 20 N. Y. 103 ; *Atkins v. Smith* 2 Atk. 63 ; *Morrell v. Dickey* 1 Johns. Ch. 153 ; *Williams v. Storrs* 6 id. 353 ; *Doolittle v. Lewis* 7 id. 45.

CAMPBELL, J. Dickinson filed his bill as an alleged creditor of the estate of Timothy Morse, deceased, to set aside an award made in July, 1863, on a submission between Seaver, as administrator with the will annexed, and the other defendants, who by the award were released from full payment of a mortgage given by them to decedent of $50,000. The bill

seeks the enforcement of this mortgage against the mort-gagors, so far as the debt thereby secured is involved, and for a general accounting and distribution of the estate.

The court below, which was the circuit court for the county of Van Buren, declared the award invalid as against com-plainant and such other creditors as should appear, and made a decree for an accounting including not only these assets, but also the credits due the administrator. Defendants appeal.

The case can be better understood by some reference to the antecedent proceedings.

Morse, who lived in Vermont, died testate in 1862, and his will was probated in Vermont, and Seaver qualified as executor. Commissioners were appointed in that State, and a large number of debts proved, including all now claimed by complainant.

In June, 1863, the will was upon regular proceedings admitted to probate in Lapeer county, Michigan, and Seaver qualified as administrator with the will annexed. No claims were ever presented or allowed in the Lapeer probate, so far as we are advised by this record.

In July, 1873, Seaver and other defendants submitted their differences to arbitration. The chief controversy—and so far as the evidence satisfies us, the only real contro-versy—was as to the mortgage before referred to, which—so far as we need refer to it—was of this nature: In 1857 the mortgagors purchased of Morse 3200 acres of land for $50,000 payable in ten instalments. There was an agreement given back that unless a railroad then projected should be built to the lands in two years, the purchasers might rescind, and Morse would release the mortgage and notes and take back the land. When the two years expired he had hypoth-ecated the securities and could not give them back. The defendants claim, and they are borne out by the evidence, that Morse under these circumstances desired them to go on and lumber the lands, and take such measures as were neces-sary for that purpose, and he would make the proper allow-

ance for the difference in price caused by the failure of the railroad.

There were some other matters between them which in our view are of no present importance.

Seaver and William F. Dickinson (father and assignor of complainant) came out shortly after Morse's death, and became fully acquainted with all of these matters. Dickinson was then interested in his own behalf or for others in claims against the estate, and defendants had full communication with him. There is no direct evidence of his complicity in the award, but he knew of the Michigan probate, and dealt with the administrator as such.

The bill claims that the award in question was made by the arbitrators as practically no more than a mere formality to carry out an arrangement as to its terms already agreed upon.

As already suggested the parties alleging claims did not prove their claims before the Lapeer probate court, and took no part in that whatever.

Complainant gets his alleged title in this way: On the 31st of December, 1872, somewhat more than nine years after the Michigan probate, a bill was filed in the United States circuit court for the Western District of Michigan, in the name of a considerable number of persons claiming to be creditors of Morse's estate, to the amount of $11,589.97 as of May 12, 1863, when the commissioners in Vermont reported—the whole amount of claims being set forth as allowed at $58,604.09—to set aside probate sales of land made in June, 1865, under a license granted in Lapeer in October, 1864, for fraud. These sales were made to William F. Dickinson, and complainant in this case was brought in as having become interested under him. The bill purported to be filed on behalf of the complainants named in it and all other creditors who might come in and contribute to the expenses.

The bill contained among other things a prayer for an accounting by Seaver of the affairs of the estate, and payment of claims, and a receiver of the assets, as well as the general prayer.

On the 7th of September, 1877, a decree was made avoid-

ing the sales, except as to Chase H. Dickinson and others not parties to the suit, and requiring an account of the proceeds to be taken. It also set forth that several of the complainants had assigned before or after suit brought (not showing who were in either category), and allowing their assignees to come in and prove their claims.

The master reported claims originally allowed at $17,707.55, part of which had been subsequently purchased by William F. Dickinson, and on September 8, 1877, transferred to Chase H. Dickinson, and the rest purchased by Henry C. McDuffy, and on the last mentioned day assigned to Chase H. Dickinson, against whom the case was discontinued.

These claims were proved by a stipulation between Thomas B. Church purporting to act as solicitor for defendant W. F. Dickinson, and by Chase H. Dickinson and Norris as solicitors for complainant, whereby it was stipulated that any person now claiming to own any of the claims allowed in Vermont, might prove them by producing and establishing by his own oath an assignment of any of those claims as appearing in what purported to be a copy of the commissioner's report—not certified in the form required by the acts of Congress, and very incomplete otherwise. Under this stipulation, Chase H. Dickinson, who is a citizen of the State of Michigan, and was no longer a party to the record, was allowed to prove all the claims passed upon, and of these there were between $3000 and $4000, which were not set forth in the bill, with interest from 1863.

No further action was taken on behalf of any of the parties to the record, but on the 25th of February a petition was filed by Chase H. Dickinson, stating the master's report and his sale of the disputed lands, leaving a balance in court of $1280.10, and praying an order of distribution. Simultaneously with this filing, and by consent of Thomas B. Church appearing for William F. Dickinson but not for Seaver, and of L. D. Norris appearing for complainants and for Chase H. Dickinson, a decree was made directing the whole, and not his aliquot part of this money to be paid to Chase H. Dick-

inson, and adjudging him to be owner of a remaining amount of claims of $30,356.13.

Upon this state of things the circuit court of Van Buren made, and we are asked to affirm, the decree appealed from. We think the decree was entirely unsustainable, either on the law or on the facts.

It is not within our province to consider the effect of the decree of the United States Circuit Court so far as it affects the parties to that suit. It does not appear to have been made by the judge on his own consideration nor to have been made on a regular hearing, or upon papers by which Seaver was called in. But it is very certain that it cannot affect strangers to the record, or operate to interfere with the regular State probate. In the view we take of the case it is not important as to complainant's claim, which for the purposes of this suit may be assumed to be one which was covered by the Vermont probate. And therefore we need not discuss this proceeding further, and need not question the decree or the manner in which Chase H. Dickinson got back upon the record as *dominus litis*.

Under our probate system estates must be settled in the probate court, and claims must be proved there. Whatever may be done with the final balance where the testator's will has been previously probated at his domicile, the estate must be administered up to the time of distribution under the State probate laws. The doctrine is elementary that no administration is extra-territorial, and the statutes provide fully for the proof of claims. No foreign proof can be enforced here without re-allowance any more than a foreign judgment of any other kind can be enforced without being sued over. The force of a foreign judgment as evidence may be very great, and in cases covered by the constitutional provisions may be conclusive, but nevertheless it must be established here in new legal proceedings. No judgment can be enforced outside of the jurisdiction rendering it, in any other way.

Under our statutes the probate judge has full power, within the time fixed by statute, to appoint commissioners and to

provide for proof before himself.   Comp. L., §§ 4420, 4427. If the executor makes no application, then the creditors have power to apply, and it must be held that if they do not choose to do so, they have only themselves to blame.

In the present case it is urged that the fraud complained of was secret, and therefore equity will aid them in securing payment out of assets of whose existence they were ignorant, and without which any second proof of claims already established in Vermont would have been to no profit.   Upon this there are several things to be considered.

In the first place no court but the probate court has any such jurisdiction *in rem*, as will enable it to reach persons out of the State, or to call in all creditors.   Every creditor is interested in reducing the claims of other creditors, and this is recognized by statute, allowing them to appeal.   Comp. L., § 4439.   The circuit court in equity has no power to act as a substitute for the probate court in this way.   Unless it has authority to deal with a case through the parties actually before it, it cannot deal with it at all.   It is beyond the power of the circuit court for Van Buren county to usurp the functions of the Lapeer probate court, in attempting to take charge of and wind up this estate.   *Shelden v. Walbridge* ante, p. 251.

Had the suit been brought merely to set aside some fraudulent transaction in aid of the administration, by a creditor in proper standing in due time, a different question of jurisdiction would present itself, involving possibly less difficulty. But in the present case we think complainant has no such equity.   Fifteen years elapsed after the will was probated in Lapeer before this bill was filed.   In the meantime none of the creditors represented by complainant attempted in any way to bring their claims before the court, or inquire into the condition of the assets.   The mortgage to Morse was on record undischarged, and they had notice that he had lately owned such a security which had only in part matured.   They ought therefore to have inquired into the matter if they desired to have it applied to their benefit.   The probate court has full power to do this.   *Shelden v. Walbridge* supra;

*In re Rathbone's Estate* ante, p. 57. And such a delay unexplained is fatal to any complaint for fraud. Not only is it not explained, but there is no allegation or showing that the original creditors were ignorant of all that was done.

So far as William F. Dickinson is concerned, he was informed before the Lapeer probate of the existence and precise situation of the mortgage, and of the counter claims of the mortgagors, and there is no reason to doubt that he kept, or might readily have kept, informed of all that followed, and did not disapprove it. At any rate he was in a position where speedy action was incumbent on him to have the assets accounted for. There is room for no serious claim that he had any reason to complain, and he never did complain, so far as the record shows.

The present complainant—according to his own proofs—has merely purchased claims for the purpose of this litigation or of some litigation. He was never defrauded. It would be against every rule of equity to allow a party to buy up stale claims and then seek to establish fraud committed against his assignors. A right to complain of fraud is not assignable, and the claims in controversy have nothing involved which could keep them alive at all unless fraud would do so. Being nothing more than an assignment of an action for fraud it is well settled that it will not be enforced. *Brush v. Sweet* 38 Mich. 574.

It would not be quite fair to defendants to dispose of the case in such a way as to leave an inference that the arbitration was fraudulent. We think the testimony shows that the mortgagors desired to rescind and were prevented by the hypothecation of the mortgage, and that they only retained the lands on the understanding that the price should be abated. We need not consider the legality of the arbitration. The result, whether treated as an award or a compromise, was not an unfair one, and we think was honestly reached.

The decree must be reversed and bill dismissed with costs of both courts.

The other Justices concurred.

Afterwards, at the January term, 1881, complainant appealed from the taxation of costs by the clerk of the Supreme Court and moved for a re-taxation. The bill of costs as allowed was as follows:

STATE OF MICHIGAN—IN THE SUPREME COURT.

*The Circuit Court for the County of Van Buren—In Chancery.*

CHASE H. DICKINSON, COMPLAINANT V. SAMUEL ROGERS ET AL., DEFENDANTS.

| | |
|---|---:|
| Solicitors' fee by rule in the Circuit Court | $ 30 00 |
| Solicitors' fee by rule in the Supreme Court | 30 00 |
| For printing record for Supreme Court, 306 pages, 70c. | 214 20 |
| For printing two briefs, one 37 pages, one 14 pages, 70c. per page, | 35 70 |
| For preparing copy of record to print from for Supreme Court, 802 folios, at 10c. | 80 20 |
| Register's fees in the Circuit Court | 10 00 |
| Register's fees for making return to Supreme Court | 5 00 |
| Clerk's fees in Supreme Court, under rule | 6 00 |
| Circuit Court Commissioner's fees taken by stenographer by stipulation, 189 folios, at 20c. a folio | 37 80 |
| To administering four oaths, at 25c. | 1 00 |

Witness fees, the names, number of days and travel of each:

| | Miles. | Day. | |
|---|---|---|---:|
| Josiah Turner, travel and attended as follows | 85 | 1 | 9 50 |
| Isaac N. Jenness, travel and attended as follows | 67 | 1 | 7 70 |
| Samuel Rogers, travel and attended as follows | 65 | 1 | 7 50 |
| George L. Seaver, travel and attended as follows: from South Haven to Detroit | 170 | 1 | 18 00 |
| George L. Seaver, travel and attended as follows: from South Haven to Grand Rapids | 65 | 1 | 7 50 |
| David R. Shaw, travel and attended as follows: to Grand Rapids | 1 | 1 | 1 00 |
| Total | | | $501 20 |

Motion submitted January 4, 1881.   Granted January 19.

*Norris & Uhl* and *Chaney* for the motion.

*Geer & Williams* against.

PER CURIAM.   The following objections to the bill of costs appear to be well taken:

1. The printing bill is *apparently* excessive.   The clerk should limit the allowance to what is the customary rate unless satisfied that the party in good faith has paid or promised to pay more.   Of course charges throughout the State

are not expected to be uniform, and counsel has a right to have the printing done where it will be convenient to him to look after the proofs.

2. If defendants claim for register's fees in the court below, they must present a bill of items. The fees in that court in the main are fees for which the register must look to complainant. It is different in the Supreme Court: the defendants being the moving party there.

3. If the stenographer's charge includes anything for taking complainant's testimony, it is to that extent erroneous; otherwise it is unobjectionable.

4. Fees charged for the attendance of parties as witnesses are not covered by the ordinary affidavit of disbursements. There should be a special affidavit showing that they attended in the capacity of witness, and traveled as charged for that purpose, and not as parties to assist, by their counsel or otherwise, in the conduct of the cause.

The defendants should be allowed to withdraw their papers and make a new showing.

---

On re-taxing costs the Clerk increased the allowance for printing to the amount sworn to in the affidavit of disbursements, having reduced it on the first taxation. At the April term complainant appealed from the re-taxation and again moved for a re-taxation. Motion submitted and granted April 12.

*Norris & Uhl* for the motion.

*Geer & Williams* against.

THE COURT ordered the amount allowed on the re-taxation to be reduced to the sum originally taxed.