BROOKS v. HARGRAVE.

1. EQUITY — ESTATES OF DECEDENTS — ACCOUNTING — PROBATE COURTS.
   As to matters relating to the settlement of estates of deceased persons, the probate courts of this State have exclusive jurisdiction, unless the remedies provided are inadequate. Act No. 271, Pub. Acts 1905 (5 How. Stat. [2d Ed.] § 12099), was not intended by the legislature to confer upon the court of chancery the powers originally vested in that court, but to leave to such court the inherent equitable powers as theretofore exercised here.

2. SAME — EXECUTORS AND ADMINISTRATORS — ESTATES OF DECEDENTS.
   Courts of equity will not interfere with the proceedings of courts exercising special and peculiar jurisdiction, created for particular purposes; and the rules which give chancery courts jurisdiction in matters of accounting as against courts of law do not apply to probate courts.

3. SAME—COURTS—ACCOUNTING.
   Courts of probate are not strictly courts of law; they exercise equitable power.

4. SAME—EXECUTOR'S ACCOUNT—INJUNCTION.

> Having assumed jurisdiction of an estate by admitting to probate the will of a decedent, the probate court does not lose jurisdiction until the estate is finally closed: no other court save an appellate court should proceed further with a suit against an executor for an accounting after the priority of jurisdiction has been brought to its attention.

5. SAME—PARTNERSHIP—FINAL ACCOUNTING.

> Where decedent by his will appointed one of his sons as executor of his estate which included a partnership business that the executor had been interested in as partner before his father's death, and where it was provided by the will that decedent's widow might dispose of the homestead and purchase a smaller one, the surplus to be held in trust for other persons interested, and it was averred in the bill of complaint that the executor received from the sale of the homestead $6,000 which with other funds of the estate he employed in the business of which he was a partner, the matter was one for the determination of the probate court, and the case should be referred to that tribunal in which the executor had filed his account.

Appeal from Saginaw; Gage, J. Submitted November 12, 1913. (Docket No. 94.) Decided March 26, 1914.

Bill by Rae H. Brooks and Helen H. Brooks against Edward C. Hargrave, executor of the estate of Edward J. Hargrave, deceased, and others, for an injunction, accounting and other relief. From a decree for complainants, defendant Hargrave appeals. Reversed.

*Weadock & Weadock (Miles J. Purcell,* of counsel), for complainants.

*Gillett & Clark* and *Fred W. De Foe,* for defendant E. C. Hargrave.

KUHN, J. Edward J. Hargrave, father of the defendant Edward C. Hargrave and grandfather of the above-named complainants, died in the country of

Wales on February 1, 1887. He left a last will and testament, which in terms was as follows:

"I, Edward J. Hargrave, of the city of Bay City, State of Michigan, being of sound and disposing mind and memory, do hereby make and declare this my last will and testament, hereby revoking all former wills by me made.

"1. I give and bequeath unto my son, Edward C. Hargrave, of Bay City, Michigan, such portion of my undivided interest in saw mill, salt block and farm owned by myself, and the said Edward C. Hargrave, as will at the time of my decease, increase the present undivided one-third ownership of said Edward C. Hargrave in saw mill, salt block and farm property, to an undivided one-half interest therein.

"2. I give and bequeath unto my beloved wife, Elizabeth W. Hargrave, an undivided one-half of the mill and salt block, and the farm, if unsold, and an undivided one-half of all the personal property used in connection with the carrying on of said mill, salt block and farm, hereinbefore designated, at the time of my decease, for the period of her natural life, subject to the limitation hereinafter contained.

"3. I hereby direct that my said farm, known as the Oaklawn farm, shall be sold and the proceeds arising therefrom be put into and used in carrying on the firm business E. J. Hargrave & Son.

"4. It is my will that after my decease, the said mill, salt block and farm business shall be carried on by my said son, Edward C. and Elizabeth W. Hargrave, my said wife, in copartnership as equal copartners, under the firm name of E. J. Hargrave & Son, the care and management thereof to be under the personal supervision and direction of Edward C., he to give his time and personal attention to the carrying on of said business, and to receive from said firm the sum of one thousand five hundred dollars per year as salary.

"5. It is further my will and I do hereby direct that my said wife during her lifetime have the profits arising from her half of said business for her maintenance, subject to the limitations herein contained, out of which it is my direction that she shall pay such balance as there may be due or to become due upon

an incumbrance upon property owned by me known as the Marston property, situate in Bay City, and that she shall also maintain and care for my son, Frank F. Hargrave, until he shall reach the age of twenty-one years, and furnish and provide him with a good English business education.

"6. It is further my will, and I do hereby give and bequeath unto my said son, Frank F. Hargrave, at the death of my said wife, Elizabeth W., all the undivided half hereby willed to her of said mill, salt block and farm, and the personal property used in connection therewith, and do hereby further direct that if my said wife shall remain living at the time my said son, Frank F., reaches the age of twenty-one years, he shall be entitled to and shall receive an undivided one-third of the interest hereinbefore bequeathed to said Elizabeth W. in the mill, salt block and farm property, and other property connected therewith, and that the said Frank F. shall then become a member of said firm, and shall give his time, attention and energies in and about the carrying on of said business, together with the said Edward C. Hargrave, and shall be entitled to his proportion of the business and the profits thereof.

"7. I do hereby give and bequeath unto my daughters, Emma J. Vance and Laura M. Brooks, one thousand ($1,000.00) dollars each from the moneys owing to me from my said son, Edward C. Hargrave.

"8. I do hereby further give and bequeath unto my said wife, Elizabeth W. Hargrave, for and during the period of her natural life all my real and personal property not hereinbefore mentioned of whatsoever the same may consist, and wheresoever the same may be situate.

"9. And I do further direct that should my said wife desire a smaller house than my present homestead, she shall have the privilege of selling the same and purchasing another, the surplus arising from such transaction to be held in trust for the heirs hereinafter mentioned.

"10. After the death of my said wife, Elibabeth W. Hargrave, I do direct that all my real and personal property bequeathed herein to her, save the said mill, salt block, farm and the personal property used in connection therewith, be sold, and the proceeds aris-

ing therefrom I do give and bequeath to my grand-
children then living, to be divided equally among
them.

"11. I do hereby nominate and appoint my said
son, Edward C. Hargrave, and my old friend, Louis
R. Russell, executors of this my last will and testa-
ment.

"In witness whereof I have hereunto set my hand
and seal at the city of Bay City, Michigan, this
twenty-second day of November, in the year of our
Lord, one thousand eight hundred and eighty-six.

[Signed]    "EDWARD J. HARGRAVE."

The defendant Edward C. Hargrave, named as one
of the executors in the will, was appointed by the pro-
bate court of Bay county, Mich., sole executor on
April 27, 1887, the other executor named in the will
having refused to act. He was required to, and did,
execute a bond in the sum of $20,000 for the faithful
performance of his duties as such executor. He
shortly thereafter filed an inventory and appraisal of
the property of said estate. The executor did not
render or file any account in connection with his
executorship until after the institution of this suit.
No commissioners on claims were appointed nor has
there been a hearing on claims by the court. Frank
F. Hargrave, the son mentioned in the will, died in
March, 1901, and his estate has never been probated.
Elizabeth W. Hargrave, the widow of Edward J. Har-
grave, died in Wales on October 29, 1897.

The bill of complaint in this case was filed January
13, 1908, and prays for the following relief:

"A. That said Edward C. Hargrave, as executor
of the last will and testament of Edward J. Hargrave,
and in his individual capacity, be decreed by this
honorable court to account to them for all property,
both real and personal, coming into his hands as
executor of the last will and testament of said Ed-
ward J. Hargrave, in and to which by reason of their
right, title, and interest therein as residuary legatees
of said Edward J. Hargrave, and as heirs at law of

said Laura M. Brooks, and as heirs at law of said Frank F. Hargrave, they are legally and lawfully entitled to.

"B. That said Edward C. Hargrave may be compelled as such executor and individual to account to these complainants for all the increase, profits, and proceeds and property coming into his hands or arriving out of or belonging to said estate of Edward J. Hargrave and to which these complainants are entitled, and for an interest, and that said Edward C. Hargrave may be decreed to pay over to these complainants each, every, and all sums that may be found due to them on such accounting; that these complainants may have such other and further relief to which they may be deemed entitled."

It is conceded that the homestead referred to in paragraph 9 of the will was sold for the net sum of $6,000, and that the proceeds thereof were never invested in another home, as might have been done under the will, but were deposited by Edward C. Hargrave in the bank account of Edward J. Hargrave & Son. It is also conceded that there was received by Edward C. Hargrave, as executor, the sum of $2,020.55, life insurance upon the life of Edward J. Hargrave payable to his estate, which sum was likewise deposited in the bank account of Edward J. Hargrave & Son.

After this cause was at issue and noticed for hearing, Edward C. Hargrave filed what purported to be his final account as executor of the last will and testament of Edward J. Hargrave in the probate court for the county of Bay, and an order for hearing was made thereon. A petition was also filed in this cause to dismiss the bill of complaint upon the ground of lack of jurisdiction of the said court in chancery to enter into an accounting with him as executor or otherwise. Upon the hearing of this petition, the same was dismissed by the circuit judge, and a general appeal taken to the Supreme Court from the order dismissing the said petition. Upon motion subsequently

made by the complainants, the appeal was dismissed by this court for the reason that the order was not a final and appealable order. See *Brooks* v. *Hargrave*, 162 Mich. 599 (127 N. W. 689). Pending this decision on the motion to dismiss the appeal, the defendant Edward C. Hargrave insisted upon a hearing of his final account in the probate court for the county of Bay and a time of hearing thereon was fixed by the probate judge. Complainants thereupon filed a petition in this suit, asking for an order to restrain said probate court proceedings, and a restraining order was granted by the circuit court in chancery. A hearing was had upon the bill of complaint and answers filed, and, on November 29, 1912, a decree was duly entered in favor of the complainants, from which decree the defendant Edward C. Hargrave has taken an appeal to this court. The decree provides as follows:

"*First.* That the defendant, Edward C. Hargrave, did receive, while acting as executor of the estate of Edward J. Hargrave, the sum of $6,000 from the sale of the homestead of said Edward J. Hargrave, and referred to in the will of said Edward J. Hargrave, and the evidence in the case, and also the sum of $2,020.55, the proceeds of an insurance policy upon the life of said Edward J. Hargrave, both of which sums of money came into the hands of the said Edward C. Hargrave as a trust fund, and was used by him in connection with the general business of Edward J. Hargrave & Son, and remains unaccounted for by him, either as executor, trustee, or otherwise.

"*Second.* That in accordance to the terms of the will of said Edward J. Hargrave, and the evidence in the case, Elizabeth W. Hargrave, widow of said Edward J. Hargrave, was entitled, in the first instance, to the use of and income from said sums aforesaid during her life, and that upon her death the same was to be divided equally among the grandchildren of said deceased, then living.

"*Third.* That said Elizabeth W. Hargrave died upon October 29, 1907, and there were seven grand-

children of Edward J. Hargrave then living, said complainants being two thereof.

"*Fourth.* That the amount due said complainants and remaining unpaid at the date hereof, with accrued interest at the rate of 5 per cent. per annum, is the sum of $2,875.26.

"*Fifth.* That this decree fixes and determines the amount found, upon an accounting, to be due and unpaid by the said Edward C. Hargrave in the capacity of executor of the last will and testament of Edward J. Hargrave, and as trustee of said fund made up as aforesaid, to complainants, and that the said complainants have execution therefor, and they are hereby authorized to take any and all legal actions and proceedings in the matter of the estate of Edward J. Hargrave, or otherwise, and against the bondsmen of Edward C. Hargrave in the matter of said estate, or any different or other proceedings as may be necessary to collect said sum, and which the law permits.

"*Sixth.* That the restraining order heretofore made by this court with reference to the final account of said executor, presented to the probate court in Bay county, in so far as any action of said court may affect the rights of said complainants as herein specified and determined, is made permanent."

It is the claim of the defendant that there was nothing left in the residuary estate, as all its assets were required for the payment of the debts of the deceased, expenses of administration, and specific legacies. It is his claim that he should be entitled to offset as against the receipt by him of the two items for which he was held in the decree the funeral expenses of the deceased, the support of the widow, the administration expenses, and miscellaneous debts of the deceased, which, it is claimed, were all paid by the firm after the testator's death and amounted to $4,157.92, also the executor's commission of $249.41, also the disbursements of the firm for the testator prior to his death, $9,675.12, all of which items were disallowed by the circuit judge upon the hearing in the chancery case.

Upon the hearing of the case no claim was made for a distributive share or interest in the estate or property of Frank F. Hargrave, for the reason that his estate was not probated and was, in any event, first chargeable with his debts, if any.

The first and important question to be determined is whether or not the circuit court in chancery has jurisdiction to hear the matters in controversy. The learned circuit judge, at the time that the petition to dismiss for lack of jurisdiction was before him, did not consider the matter entirely free from doubt, but came to the conclusion that in view of the circumstances of this particular case Edward C. Hargrave, as a surviving partner, became a trustee for all concerned in the partnership business, and as such surviving partner it was his duty to account to the representatives of his deceased partner for all of the partnership assets, and for this reason the circuit court in chancery had jurisdiction. A careful examination of the bill of complaint and of the relief asked for is convincing that it asks for an accounting by the defendant as the executor of the estate of his father

It is well established in this State that the probate court has exclusive jurisdiction of all matters relative to settlement of estates of deceased persons, except in cases where its remedies are inadequate. *People, ex rel. Campau,* v. *Wayne Circuit Judge,* 11 Mich. 393 (83 Am. Dec. 754) ; *Holbrook* v. *Campau,* 22 Mich. 288; *Dickinson* v. *Seaver,* 44 Mich. 624 (7 N. W. 182) ; *Church* v. *Holcomb,* 45 Mich. 29 (7 N. W. 167) ; *Morford* v. *Dieffenbacker,* 54 Mich. 593 (20 N. W. 600) ; *Schlee* v. *Darrow's Estate,* 65 Mich. 362 (32 N. W. 717) ; *In re Andrews' Estate,* 92 Mich. 449 (52 N. W. 743, 12 L. R. A. 296) ; *Nester* v. *Ross' Estate,* 98 Mich. 200 (57 N. W. 122) ; *Cole* v. *Cole's Estate,* 125 Mich. 655 (85 N. W. 113).

Act No. 271, Public Acts of 1905, being an amendment of section 651, 1 Comp. Laws (5 How. Stat. [2d Ed.] § 12099), prescribes the jurisdiction of probate courts and courts of chancery in connection with settlement of estates. The proviso "that the jurisdiction hereby conferred shall not be construed to deprive the circuit court in chancery, in the proper county, of concurrent jurisdiction as originally exercised over the same matters," was construed by this court in the case of *Nolan v. Garrison*, 156 Mich. 397, 401 (120 N. W. 977), where the court said:

"We are of the opinion that it was not the intention of the legislature by the amendment to confer upon the court of chancery the powers originally exercised by that court, but that it was the intention, as declaratory of the existing law, to remove any doubt as to the power of the court to exercise its general inherent equity powers where the remedies in the probate court were inadequate, and that the expression, 'originally exercised over the same matters,' should be construed as referring to the exercise of the inherent equitable powers of the court as theretofore exercised in Michigan. *State v. Ueland*, 30 Minn. 277 [15 N. W. 245]."

See, also, *Davis v. McCamman*, 165 Mich. 287 (130 N. W. 691). Can it be said, under the facts of this case, that the remedies of the probate court are inadequate?

The rules which give chancery courts jurisdiction in matters of accounting as against courts of law are not applicable to the probate courts. It has been laid down as a general rule that courts of equity will not interfere with the proceedings of courts of special and peculiar jurisdiction created for particular purposes or with special and peculiar powers. 1 High on Injunctions (4th Ed.), § 50, and cases cited. Probate courts are not courts of law, strictly speaking. *Rodgers v. Huntley*, 166 Mich. 129 (131 N. W. 524).

They exercise equitable powers as well. As was said in *Brown* v. *Forsche,* 43 Mich. 492, 501 (5 N. W. 1011):

"A probate case on appeal is to be tried and determined on the same principles that would be administered by the probate court itself. That court, in adjusting the accounts of administrators, is governed by broad principles of equity."

See, also, *Gott* v. *Culp,* 45 Mich. 265 (7 N. W. 767); *Loomis* v. *Armstrong,* 63 Mich. 355 (29 N. W. 867); *Ward* v. *Tinkham,* 65 Mich. 695 (32 N. W. 901); *Duvernois* v. *Kaiser,* 75 Mich. 431 (42 N. W. 848). A great part of the time of probate courts is given to matters of accounting, and estates cannot be closed and the executor or administrator discharged until a proper account has been filed and the court satisfied that the disbursements claimed to have been made are proper and legal. A mere complexity of accounts should not, and does not, oust that court of jurisdiction. It is only when other interests than those of the estate and the executor are involved that the chancery court assumes jurisdiction, rather because of the complexity of parties than because of the complexity of the accounting.

The defendant was appointed and qualified as executor, giving a bond of $20,000 to properly account to the probate court for such property as came into his hands as executor. Complaint is made that he has failed to account in the probate court, and when he attempts to do this he is enjoined by the chancery court from having his account heard. There can be no question that the probate court assumed jurisdiction of the subject-matter in controversy when the will was admitted to probate and the defendant qualified as executor. It does not lose jurisdiction until the estate is finally closed. Having assumed jurisdiction, it has exclusive jurisdiction and no other court, save an appellate one which subse-

quently assumes to act in the matter, should proceed further when the priority of jurisdiction is called to its attention. *E. T. Barnum Wire & Iron Works* v. *Speed,* 59 Mich. 272 (26 N. W. 802, 805).

The more appropriate place for the accounting by the executor in the first instance is in the probate court, from which court he obtained his authority to administer and to which he expressly bound himself to account by giving a bond.

In Rhode Island the jurisdictions of the municipal court (corresponding to our probate court) and the chancery court are concurrent. In the case of *Dean* v. *Rounds,* 18 R. I. 436 (27 Atl. 515, 28 Atl. 802), the court held that the jurisdiction of the probate court dated from the issuance of the letters of administration and the filing of the bond, and not from the filing of the account, and stayed chancery proceedings until the settlement of the probate account.

In the case of *Rutherford* v. *Myers,* 50 App. Div. (N. Y.) 298 (63 N. Y. Supp. 939), in which State the chancery courts and surrogate courts also have concurrent jurisdiction in the settlement of estates, the court said:

"If, upon the determination of the accounting proceeding, it appeared that the plaintiff was denied any relief to which, upon equitable principles as administered in courts of equity, he was entitled, he could then apply to a court of equity for such relief; but at this stage of the proceeding there is nothing to prevent the surrogate's court from proceeding with the accounting, or that would justify the interference of the Supreme Court."

In the instant case, the will did not name the executor as a trustee. By paragraph 8 of the will, a life estate is created in the widow, with a remainder over. The will in terms creates a trust fund of the proceeds of the sale of the homestead, but the trustee of this fund was Elizabeth W. Hargrave. It is true

the defendant Edward C. Hargrave actually took the funds and deposited them in the firm accounts, as he claims, to reimburse the firm for the advancements made to pay the funeral expenses, support of the widow, and administration expenses, and applying the balance on the indebtedness of the father. It is urged that this is simply an afterthought and a subterfuge on the part of defendant, as it appears that these disbursements were actually charged on the books of the firm to the account of Mrs. Hargrave. Whatever merit there may be to these contentions, it is our opinion that these matters should have been first submitted to the probate court for adjudication, and if, after an accounting there, it appeared that the complainants had been denied relief which they were entitled to, which the probate court could not give, application might then very properly have been made to the chancery court for relief.

The decree of the circuit court will be reversed, and further proceedings in that court will be stayed until the hearing by the probate court of the final account of the executor and an order made thereon, with costs to appellant.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred. MOORE, J., did not sit.