WESSBORG *v.* MERRILL.

1. EXECUTORS AND ADMINISTRATORS—TRUSTS— ACCOUNTING — PRO-
BATE COURT—JURISDICTION.

Under section 28, Act No. 253, Pub. Acts 1899 (3 Comp.
Laws 1915, § 14076), providing that the probate court
may compel a final judicial settlement of the account of
a testamentary trustee where the trust created by the
will is ready to be executed, so that the persons bene-
ficially interested are, by the terms of the will, or by
operation of law, entitled to receive any money or other
property from the trustee, where a person appointed as
executor, and also as testamentary trustee, qualifies and
acts in the capacity of testamentary trustee rather than
as executor, the probate court has jurisdiction to demand
an accounting by such trustee.

2. SAME.

The probate court has jurisdiction of an action against an
executor for an accounting.

3. SAME—WILLS—TRUSTS—ACCOUNTING—ESTOPPEL.

Where persons who are appointed as executors and also
as trustees under a will take possession of corporate stock
as executors, charge themselves with it as executors, in-
ventory and appraise it as an asset of the estate, continue
to hold it in the name of the estate, untransferred, collect
dividends paid to them as executors by checks drawn in
favor of the estate, indorse checks as executors, and de-
posit them in a bank to the estate's account and as execu-
tors draw checks on such account in distributing dividends
to the beneficiaries and never qualify as trustees, they
are estopped to claim that they hold such stock in any
other capacity than that of executors.

4. SAME—BOND.

One who is appointed as  testamentary trustee can accept
the trust and perform the duties of trustee only after
filing the required bond.

5. WILLS—EXECUTORS AND ADMINISTRATORS—LEGACY—VESTING OF
TITLE—TIME.

Where there is no gift of personalty, but directions to

executors or trustees to pay or divide and to pay at a future time, the vesting of the estate will not take place until such time or act.

6. SAME—LEGACY—PRINCIPAL—INTEREST.

Where a gift is to be severed instanter from the general estate for the benefit of the legatee and in the meantime the interest thereof is to be paid him, it is indicative of the intention of the testator that the legatee shall in all events have the principal, and is to wait only for the payment until the date set.

7. SAME—LEGACY—VESTING OF TITLE—GIFT OF INTEREST.

Where a bequest is made of personalty, a gift of the interest for the *interim* to or for the benefit of the legatee vests the principal.

8. SAME—CONSTRUCTION—LEGACY—GIFT TO A CLASS.

There is no gift of corporate stock to a class where a testator bequeaths stock in trust for his wife and children to be held intact until a specified date, and during the *interim* dividends are to be paid to the wife and children in equal shares, and after the expiration of such period the stock is to be equally divided, and all the beneficiaries are living at the time of the death of the testator, as the number of persons is definite at the time the gift takes effect, the date of the death of the testator.

9. ELECTION OF REMEDIES—INCONSISTENT REMEDIES—ACCOUNTING.

There is no election of remedies by the executor of the estate of a beneficiary under a will of a portion of stock, which was bequeathed to trustees in trust for the benefit of testator's wife and children, including plaintiff's testate, to be held until a specified date, the dividends to be paid equally to the beneficiaries, and the principal equally divided after the expiration of such period, where the executor of the estate of such beneficiary first unsuccessfully attempts by a bill in chancery to secure a share of the dividends due to the estate of such beneficiary and petitions for the removal of the executor, and, after the expiration of such period, files a petition in the probate court asking for an accounting of the dividends declared and paid since the death of said beneficiary and to compel the payment of same to him as executor of the estate of such beneficiary, as the remedies were not inconsistent.

Error to Saginaw; Searl, J., presiding. Submitted

January 8, 1917. (Docket No. 49.) Decided March 30, 1917. Rehearing denied June 1, 1917.

Petition in probate court by Eric S. Wessborg, executor of the last will and testament of Alice E. Wessborg, deceased, against Herbert W. Merrill and others, executors of the last will and testament of William Merrill, deceased, for a decree requiring respondents to transfer to petitioner, as such executor, certain stock and stock dividends. From an order granting the prayer of the petition, respondents appealed to the circuit court. Judgment for petitioner. Respondents bring error. Affirmed.

G. W. Davis, for appellants.

Weadock & Weadock, for appellee.

STEERE, J. This case came to the circuit court of Saginaw county on an appeal taken by the executors of the last will and testament of William Merrill, deceased, from an order of the probate court of that county, which, amongst other things, required them to pay one-sixth of the dividends declared on certain stock, left by their decedent for his wife and children, to Eric S. Wessborg, executor and trustee of the estate of his wife, Alice E. Merrill Wessborg, deceased, who was a daughter of William Merrill. The case was tried in the circuit court before a jury; but at conclusion of the proofs it was conceded by counsel for the respective parties that questions of law controlled, and, after argument of counsel, the court directed a verdict and rendered judgment thereon affirming in substance the order made by the probate court. The executors thereupon removed the proceedings to this court for review by writ of error.

The serious controversy between these parties centers around certain stock, known as the "Mitts & Mer-

rill stock," owned by William Merrill at the time of his death and disposed of in his will as will later appear.

S. S. Mitts and William Merrill, brothers-in-law, were together for many years as partners in a profitable manufacturing business located at Saginaw, Mich., devoted principally to making special kinds of machinery, tools, and equipment used in woodworking factories and sawmills. In 1904 they organized their business into a corporation under the name of Mitts & Merrill with a capital stock of $50,000 divided into shares of $100 each, of which each of them took 249 shares and gave to each of their wives one share. Upon organization as a corporation, composed of the former partners and their wives, Mitts was elected president, his wife vice president, and William Merrill secretary and treasurer.

On the 16th day of February, 1907, William Merrill died, leaving a widow, Eudora B. Merrill, and five children, Herbert W. Merrill, the oldest, aged 32, Elizabeth M. Gage, Alice E. Merrill, George P. Merrill, and Edith J. Merrill, the youngest, aged 17 years. He left a last will and testament executed on February 8, 1905, approximately 2 years before he died. This will consists of 17 paragraphs containing numerous provisions and bequests, most of which are not questioned nor material to this inquiry. By the ninth paragraph, which is the chief subject of contention here, deceased disposed of his Mitts & Merrill stock as follows:

"I give and bequeath unto my wife, Eudora B. Merrill, my son, Herbert W. Merrill, and to my son-in-law, Phillips H. Gage, and to their survivors, all my stock in Mitts & Merrill, a corporation, in trust, however, for my wife and five children, to hold said stock intact until August 11th, 1914, and to pay the dividends from said stock to my wife Eudora B. Merrill, and to each of my five children and to their respective

heirs, share and share alike (except as stated in paragraphs 11 and 12). After August 11th, 1914, the stock shall be equally divided among them (except as stated in paragraph 12), and each may dispose of his or her own stock at will, under this condition, however, that the stock shall be sold to one of their own number, to keep it in the family, providing the price obtained is as good as any outsider will give."

Paragraphs 10 and 16 provide:

"*Tenth.* All the rest and residue of the property of which I may die seised or possessed, I give, bequeath, and devise unto my wife, Eudora B. Merrill, and to my two sons and three daughters share and share alike and to their respective heirs, except as stated in paragraphs 12 and 13."

"*Sixteenth.* I appoint my wife, the said Eudora B. Merrill, and my son, the said Herbert W. Merrill, and my son-in-law, the said Phillips H. Gage, executors of this my last will and testament."

This will was admitted to probate on the 3d day of April, 1907, and the executors named in it qualified as such, giving bond for the faithful performance of their duties. An inventory of the estate which was filed in the probate court and verified by the usual oath of the executors as "a true and perfect inventory" showed assets aggregating something over $84,000, including the Mitts & Merrill stock, which was appraised at $37,350; but the estate and this stock ultimately proved to be of much greater value.

About four months after her father's death Alice E. Merrill was married to Wessborg, appellee herein. No children were born to them, but on December 24, 1912, they legally adopted as their daughter and heir at law, an infant girl born the preceding February, named in the records of her adoption Greta Wessborg, and thereafter assumed towards her in fact and law the relation of parents. On March 24, 1913, Alice E. Merrill Wessborg died testate, survived by her hus-

band and adopted daughter, Greta. By her will, executed March 15, 1913, she nominated Wessborg, her husband, executor and trustee of her estate, which she provided should be impounded in trust until after the death of her mother and an aunt and until her "daughter, Greta Wessborg," should arrive at the age of 25 years, when it should be divided between her and "my said husband, Eric Wessborg," if both survived; otherwise the survivor should receive the whole thereof. In the meantime the net proceeds of her estate were to be distributed between her husband and daughter, her mother, an aunt, and a cousin, in specified portions and manner.

Aside from the Mitts & Merrill stock, the duties of the executors were such as would usually arise in the probation of an estate with little indebtedness and in reasonably good condition for assembling and distributing its assets to beneficiaries, and with approval of the other executors Herbert Merrill looked after the details and performed the active duties demanded of the executors. The certificate for 249 shares in the Mitts & Merrill company issued to William Merrill was found after his death in his private safe at the office of the corporation, and was taken charge of by Herbert under authority of the will, but remained as an asset of the estate in his father's name, untransferred on the books of the corporation.

Owing to a failure to agree as to salaries, no director was chosen to fill William Merrill's place on the board of directors for nearly a year after his death, and on January 7, 1908, a paper was signed by Phillips H. Gage, Eudora B. Merrill, and Herbert W. Merrill agreeing between themselves "as executors and trustees of the estate of William Merrill" that Herbert should have full authority to represent the interests of the estate in the Mitts & Merrill corporation and vote the 249 shares of stock at all stock-

holders' meetings. By its express terms this agreement expired April 1, 1909, but Herbert testified that he was permitted to act under it until the time of the trial. This was supplemented by the following agreement, approved by the probate court, dated April 13, 1908:

"In the Matter of the Estate of William Merrill, Deceased.

"Whereas, the estate of William Merrill, deceased, owns a half interest in the corporation of Mitts & Merrill, lacking one share, which is owned by Eudora B. Merrill; and whereas, it has been impossible to make satisfactory arrangements regarding the salary of H. W. Merrill who represents the interests of the estate of William Merrill, deceased, in the corporation, acting as a director. and secretary and treasurer thereof:

"Therefore we, the undersigned executors and heirs of the estate of William Merrill, deceased, do most respectfully petition your honorable probate court that an order be issued allowing said H. W. Merrill for his services, as representative of said estate, a yearly salary as follows: The sum of $628 to make his salary $2,500 for the year ending February 29, 1908, and thereafter the sum of three thousand dollars ($3,000) per year until such time as the corporation of Mitts & Merrill shall arrange to pay a satisfactory salary to said representative.

"ALICE E. WESSBORG.
"EUDORA B. MERRILL.
"EUDORA B. MERRILL, Ex'r.
"ELIZABETH M. GAGE.
"PHILLIPS H. GAGE, Executor."

Herbert drew the salary provided for in this agreement until March 1, 1910, after which an arrangement was made settling the disagreement as to salary for acting in his father's previous capacity as secretary and treasurer for the company, and he thereafter was paid by it.

Over $185,000 was received by the executors as dividends on the 249 shares of stock in the Mitts &

Merrill corporation, paid by its checks drawn in favor of the estate of William Merrill, in whose name the stock continued on the corporation books. These checks were indorsed by the executors and deposited to the credit of the estate in a Saginaw bank. In checking on this account the executors used a special form of check headed "William Merrill Estate."

From the time of William Merrill's death to that of his daughter Alice, all dividends received on the Mitts & Merrill stock were paid by the executors in equal shares to his widow and five children, Alice regularly receiving her one-sixth with the rest, but none of the dividends accruing since her death have been paid to Eric Wessborg, her husband and executor of her estate. He testifies that his inquiry of Herbert as to dividends was answered evasively, and they talked about Wessborg selling his and his baby's share in the estate, as a result of which Herbert made a memorandum of a proposal and handed it to him to sign, but he declined, and later he went and talked to Phillips Gage about it, who told him there was talk in the family as to whether he and Greta had any interest or right in the estate, over which there was some diversity of opinion, and Gage suggested that he take legal counsel before making any settlement with Herbert. This he did. Being denied, after demand, participation in the dividends and refused recognition as executor of his wife's estate, he first attempted legal proceedings to secure the same by a bill in chancery and a petition for removal of the executor, which proved abortive, and after the period specified in paragraph 9 of William Merrill's will had expired he filed his petition with the probate court, asking for a determination of the dividends declared and paid on the Mitts & Merrill stock since the death of Alice E. M. Wessborg, for an order requiring the executors to pay him one-sixth of the same and to

turn over one-sixth of said stock to him, as executor of the last will and testament of his wife, Alice.

The petition and answer are lengthy and elaborate pleadings, presenting numerous issues and subissues, but the substance of all serious controversy between the parties is stated in three questions proposed by appellants' counsel to the trial court as presenting the issues raised on their appeal, which are:

"(1) Is the Mitts & Merrill corporation stock and the dividends arising therefrom which have not been paid to the petitioner or to his decedent in the respondents' possession as executors of the last will and testament of William Merrill, deceased, or in the possession of the individuals Herbert W. Merrill, Eudora B. Merrill, and Phillips H. Gage, as legatees and trustees thereof?

"(2) Was there a settlement made by and between the legatees of William Merrill, deceased, and the executors of his last will and testament and distribution of his estate made, as provided by his will?

"(3) Did the title to the Mitts & Merrill stock at the date of the death of William Merrill vest in the three persons named as legatees and trustees of said stock, to be kept by them intact until August 11, 1914?"

There is no proof to sustain the affirmative of the second question so far as the Mitts & Merrill stock is concerned, and it calls for no consideration.

Upon the proposition involved in the first question appellants' counsel quotes from Perry on Trusts the statement that, "if a testator in his will appoints his executor to be a trustee, it is as if different persons had been appointed to each office," and contends, as we gather from the lengthy discussion of their powers and the jurisdiction over them in both capacities, that appellants held this stock under the will as trustees, and not as executors, for which reason the probate court was without jurisdiction to act, a chancery court being the proper tribunal in which to demand an accounting from a trustee, citing authorities.

The petition runs against appellants as "executors and trustees under the last will and testament of William Merrill," and we are impressed that, had they qualified and acted in the capacity of testamentary trustees rather than executors, the probate court would have jurisdiction under the provisions of Act No. 253, Pub. Acts 1899 (re-enacted in the recent judicature act [Act No. 314, Pub. Acts 1915; 3 Comp. Laws 1915, § 14052 *et seq.*), entitled:

"An act to establish and confirm the jurisdiction of probate courts over testamentary trusts and trustees, and to provide for the administration and control of such trusts in said courts."

Under this act every testamentary trustee before entering upon his duties as such is required to give a bond to be approved by the court for faithful performance of the trust in various stated particulars, among which is "to perform all orders and decrees of the probate court, by the trustee to be performed in the premises" (section 3), and section 28 provides that "the probate court may compel a final judicial settlement of the account of a testamentary trustee" where the trust created by the will is ready to be executed, "so that the persons beneficially interested are, by the terms of the will, or by operation of law, entitled to receive any money or other property from the trustee."

Paragraph 9 of the will makes clear that after August 11, 1914 (except as stated in paragraph 12, which is irrelevant here), the persons beneficially interested are entitled to receive from appellants the 249 shares of Mitts & Merrill stock with any collected dividends yet unpaid, whether in their hands as executors or trustees. The proof is, however, convincing that they received, handled, and hold this stock as executors. They took possession of it as such, charged themselves with it as executors, inventoried and appraised it as

an asset of the William Merrill estate, continued to hold it in the name of the estate, untransferred, collected dividends paid to them as executors by checks drawn in favor of the estate, indorsed the checks as executors, and deposited them in bank to the estate's account, and as executors drew checks on that account in distributing the dividends to beneficiaries. They never qualified as trustees, filed no bond, which was a prerequisite to legal possession and control of the property in that capacity, and made no assignment of the stock to themselves as trustees. They could accept the trust and perform the duties of trustee only after filing the required bond. *In re Erdman's Estate,* 179 Mich. 567 (146 N. W. 400). The estate has not been closed, and no order of the probate court has been made assigning this stock to them as trustees or releasing them from accountability for it under their executor's bond as an inventoried asset of the estate.

The period of trust having expired, and the persons named in the will to act as executors and trustees being the same, the stressed question of their official capacity impresses us under the present situation of affairs as of minor significance and somewhat academic; but, whatever its importance, we fully agree with the trial court that, under the undisputed evidence, appellants held, handled, controlled, were legally in possession of, and accountable for, this stock and the dividends from it as executors, and by their own acts and admissions of record they are not in a position to successfully maintain before a court to the contrary.

The propositions urged for appellants under the third question are, in substance, that by the provisions of paragraph 9 of his will the testator made no direct present gift of the Mitts & Merrill stock to the beneficiaries named, but bequeathed it in trust to appellants to hold intact and in their names until a designated

date, with directions that when that future time arrived they should divide it amongst specified beneficiaries, not as a gift *in præsenti* with enjoyment deferred, but with only present enjoyment of income and a gift *in futuro;* that the future distribution was to a class, and confined to persons of that class in existence at the date when the distribution is directed to be made, and the contemplated gift to any individual of that class is contingent upon survivorship; that appellee's wife, Alice, having died over a year before the date of distribution, neither she nor her estate as a fictitious or juridical person could participate.

The rule of construction relied upon in support of these propositions, as applied by appellants' counsel, with abundant citation of authority, to certain provisions and omissions specially pointed out in the will, is thus concisely stated in *Warner* v. *Durant,* 76 N. Y. 133, and quoted with approval in *Palms* v. *Palms,* 68 Mich. 355 (36 N. W. 419) :

"Where there is no gift, but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting will not take place until that time arrives."

There is, however, a marked exception to this rule, or "distinction grafted upon it," also stated in *Warner* v. *Durant,* as follows:

"Where the gift is to be severed instanter from the general estate, for the benefit of the legatee, and in the meantime the interest thereof is to be paid him, that is indicative of the intent of the testator that the legatee shall at all events have the principal, and is to wait only for the payment until the day fixed."

In *Toms* v. *Williams,* 41 Mich. 552 (2 N. W. 814), this distinction was recognized and applied, it being said:

"While there has been some variance among the authorities concerning the legal distinctions between vested and contingent estates, they chiefly agree:

*First*, in favoring the vesting of interests; and, *second*, in treating future interests as vested where there is any present interest in the income of the property. * * * The New York cases, which are quite as technical as any others in raising difficulties against perpetuities, are quite clear in favoring construction in aid of vesting"—citing 20-odd cases.

To the same effect, *vide*, also, *Taylor* v. *Richards*, 153 Mich. 667 (117 N. W. 208).

It is true that in the paragraph disposing of the Mitts & Merrill stock the testator did not in exact language first make gift direct to the intended beneficiaries, but he did expressly provide that the named stock should be set apart, severed instanter from his general estate, and held intact by appellants under a naked, impassive trust "for my wife and five children" until a specified date, but in the meantime the dividends realized from it were to be paid to his wife and to *each* of his five children, and to their respective heirs, "share and share alike." His wife and five children so provided for in his will, made two years before, were all living when he died, and were regularly paid "share and share alike" the liberal dividends this stock furnished until the daughter Alice died six years later.

It is to be noted that the property under consideration here is personal, and while the general rule as to vesting of title in personal and real estate is broadly the same, yet in construing the language of a will relating to an interest in land where more technical terms may be essential to make plain the nature of the estate granted than in a gift of personalty a more critical consideration of the words, or language used, is sometimes important. In Hawkins on Wills (2d Ed.), p. 223, it is said:

"The rules as to the vesting of gifts by will differ according as the subject-matter is personal estate, real estate, or a legacy charged on land."

On page 227 the author lays down the rule that:

"In bequests of personal estate, a gift of the whole _nterim interest to or for the benefit of the legatee *prima facie* vests the principal. * * * The rule is the same where the interest is given to other persons to be applied for the benefit of the legatee. Thus a bequest to the children of A. when they attain 21, the interest to be applied for their maintenance and education during their minorities, vests in the children at birth."

In Beach on the Law of Wills, § 178, under heading "The Effect of a Bequest of Intermediate Income," this subject is more amply discussed, with citation of authorities, fully sustaining the rule above stated.

The characteristics of a class do not apply to deceased's wife and five children under the facts in the case and provisions of the will. There is no language in the will naming them as a class or indicating that they are so intended. All are made equal objects of testator's bounty, and each is given a distinct, equal part, share and share alike, of his holding in the capital stock of this corporation which is divided into shares. Each was living when the will was made and when the testator died, from which time his will spoke, and the estate vested in his beneficiaries in the absence of clear and unambiguous language plainly directing to the contrary. No condition of survivorship is found stated in the will, nor provision for lapsed legacies, nor words of exclusion used. Each was given the intermediate income of his or her share until the date for final distribution, which involved no stated contingencies, and was certain to arrive. It is said in *Re Brown*, 154 N. Y. 313 (48 N. E. 537) :

"In legal contemplation a gift to a class is an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are to take in equal, or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number."

*Vide,* also, *In re Ives' Estate,* 182 Mich. 699 (148 N. W. 727).

We think this is primarily a matter for the probate court under the holding in *Brooks* v. *Hargrave,* 179 Mich. 136 (146 N. W. 325), and the action taken by appellee prior to July 11, 1914, did not amount to an election of remedies which precluded this petition, but rather was in the nature of an attempt to pursue a wrong but not inconsistent remedy.

Under the foregoing conclusions upon the controlling question, no errors are found requiring that the judgment of the trial court should be disturbed, and the same is hereby affirmed, with costs, with the exception that, being strongly of the opinion this record is unreasonably enlarged by a detailed volume of matter unnecessary to the controlling questions involved, inserted on the insistence of the appellee, half of the costs of printing the record shall be borne by the latter.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.