### DAVIS v. McCAMMAN.

1. ESTATES OF DECEDENTS — PROBATE COURTS — EQUITY JURISDICTION—EXECUTORS AND ADMINISTRATORS.

Except where the remedies provided in the probate court are inadequate, or where the interposition of equity is necessary for some auxiliary purpose, the probate court has exclusive jurisdiction over the settlement of estates of deceased persons.

2. SAME — FRAUD — JUDGMENT — SETTING ASIDE PROCEEDINGS OF PROBATE COURT.

A bill in equity against an administrator, charging him with filing fraudulent accounts and with improperly expending the funds of the estate of decedent, is insufficient, where it shows orders of the probate court based on and allowing such accounts, but fails to show any diligence on complainant's part in protecting her rights, and fails to show that she dis-

covered the fraud too late to bring the matter before the probate court, or that they were not passed on by that court, or that complainant did not have due notice and opportunity to be heard, and to take an appeal from such orders.

Appeal from Eaton; Smith J. Submitted February 15, 1911. (Docket No. 181.) Decided March 31, 1911.

Bill by Charles J. Davis and Mary A. Lindsay Smith against James R. McCamman and Amanda M. Martin for an accounting by one of defendants as administrator of the estate of Malvina R. McCamman, deceased, and for other relief. From a decree sustaining a plea to the bill, complainants appeal. Affirmed.

*Samuel H. Davis* (*O. H. Reed*, of counsel), for complainants.

*Horace S. Maynard*, for defendants.

BLAIR, J. The bill of complaint in this cause, filed in August, 1910, alleges the death intestate of Malvina R. McCamman of the city of Charlotte, February 7, 1901, seised and possessed of a large amount of real and personal property, and leaving as her heirs at law one son, James R. McCamman, and two daughters, Amanda M. Martin and Mary A. Lindsay Smith; that on April 8, 1901, letters of administration were duly issued to said James R. McCamman as administrator of said estate; that the appraisers appraised property outside of Eaton county without any warrant therefor; that the inventory of the estate "is grossly false and fraudulent; that large and valuable tracts of real estate of which the said Malvina R. McCamman died seised are omitted from said inventory;" that her homestead is omitted, and "that the said James R. McCamman falsely and fraudulently withheld same from the effects and inventory of said estate, and that the said James R. McCamman has falsely and fraudulently appropriated the said property to his own use and benefit;" that a valuable piece of property in

Battle Creek is omitted, and "that the said James R. McCamman and the said Amanda M. Martin have falsely and fraudulently withheld same from effects and inventory of said estate, and that the said Amanda M. Martin has falsely and fraudulently appropriated the same to her own personal use and profit;" that certain land in Lansing was inventoried which did not belong to the estate, and the administrator opened a gravel pit and sold gravel therefrom and charged the estate in his accounts large sums of money for labor of men and teams, for personal services and traveling expenses, litigation, etc., the exact amount of which complainants are unable to state; that the charges so made were not legitimate and were "fraudulent upon the estate;" "that various sums of money, the exact amounts of which are not known to your orator and oratrix, were borrowed from the said Malvina R. McCamman by the said Amanda M. Martin and the said James R. McCamman, but that said inventory contains no items containing sums so borrowed, except one item of $250 due said estate from James R. McCamman; that said inventory shows no sums borrowed by Amanda M. Martin.

"Your orator and oratrix believe and charge the fact to be that large sums of money are due the estate from said parties, and that such sums have been falsely and fraudulently withheld from said estate.

"Your orator and your oratrix further show that said James R. McCamman, as administrator, has falsely and fraudulently credited himself with various items of disbursements, much to the damage of the estate, and that he has appropriated such sums to his own personal use and benefit; that in his report to the said probate court filed on, to wit, the 4th day of October, A. D. 1906, on page 26, a certified copy of which is hereto annexed marked Exhibit H, and made a part of this bill, he credits himself with disbursements of the following items, to wit: Cash $758.16; expended house, $179.14; that said items are in excess of his total disbursements as itemized in said annual report, in which the aggregate total disbursements, as itemized, are $17,876."

That the administrator credited himself in his accounts with $2,480 for certain lands, whereas the aggregate amounts of the considerations of the conveyances thereof amounted to $2,541.33; that the reports show an amount received from one Cook of $200.45 for the sale of real estate, and a certain deed shows the expressed consideration to be $225; that the account shows the sum of $401.55 received from one Meecham, and a deed recorded shows a consideration expressed of $575; that the total sum derived from the sale of real estate shown by the account is much less than the total consideration shown by the deeds of conveyances, but the accounts are so indefinite that it is impossible to determine just where the discrepancy is, and the not keeping of proper accounts is a fraud on the estate and heirs; that the administrator has not accounted for his doings between the period of October 1, 1906, and April 30, 1907; that the probate order of May 9, 1907, directed the administrator to pay over one-third of $780 found to be the balance to be distributed to the said three heirs at law, but he did not pay one-third to complainant Smith; that a large amount of real estate belonging to said estate was conveyed by the heirs at law without the order of the court; that the receipts of those sales should have been paid to the heirs, and not have gone into the funds of the estate; but the administrator refused to pay any portion to complainant Smith; that the administrator, without authority, used $1,100, to construct a new house, and $170, to purchase a house, of the moneys of the estate.

" That on, to wit, the 25th day of April, A. D. 1907, the said James R. McCamman, as administrator, exhibited and filed a final report of his doings in said estate and petitioned that the same be allowed, a certified copy of which is hereto annexed and marked Exhibit A, and made a part of this bill; that on, to wit, the 9th day of May, A. D. 1907, upon due hearing said probate court made an order allowing said final account; that said order is recorded in Liber 37 of Probate Records, on page 123, a certified copy of which is hereto annexed, marked Exhibit B, and made a part of this bill; that on, to wit, the

6th day of March, A. D. 1908, said James R. McCamman, as administrator, exhibited and filed a final account of his doings in said estate with said probate court, and petitioned that the same be allowed, a certified copy of said petition is hereto annexed, marked exhibit C, and made a part of this bill; that on, to wit, the 26th day of March, A. D. 1909, hearing was had on said petition, and said probate court made an order allowing said final account; that said order allowing said final account is recorded in Liber 33 of the Probate Records, on page 292, a certified copy of which is hereto annexed, marked Exhibit D, and made a part of this bill; * * * that on, to wit, the 10th day of September, A. D. 1909, the said Mary A. Lindsay Smith did duly assign certain of her interest to Charles J. Davis of the city of Lansing, county of Ingham, and State of Michigan."

The second, third, and fourth paragraphs of the prayer for relief are as follows:

" That the court set aside the orders of the said probate court of May 9, A. D. 1907, and of March 26, 1909. That the court set aside the annual reports of said administrator, of his doings in said estate, and direct him to fully and truly account of his doings in connection with said estate. That said James R. McCamman be discharged as administrator, and that the said probate court be directed to appoint some other person who is suitable and well qualified to act as administrator."

The defendants demurred to the bill, with a plea joined. The demurrer was ignored by the court. The plea, broadly, was that the matters alleged in the bill related to the settlement of an estate of which the probate court had exclusive jurisdiction, and that the bill showed no grounds authorizing an equity court to usurp the jurisdiction of the probate court and take the estate and settle it to the exclusion of the probate court. The opinion of the court held the plea well taken, and a decree was entered in accordance with the opinion. Complainants appeal from the decree allowing the plea. The plea sets up in detail the proceedings in the probate court.

The probate court has exclusive jurisdiction over the settlement of the estates of deceased persons, except

where its remedies are inadequate, or the interposition of equity is necessary for some auxiliary purpose. *Nolan* v. *Garrison*, 156 Mich. 397 (120 N. W. 977). We have held that the probate court has authority to order a rehearing of an administrator's account, on a showing of mistake or fraud, under the provisions of Act No. 271, Pub. Acts 1905. *In re Mills' Estate*, 158 Mich. 504 (122 N. W. 1080).

Conceding that, where fraud has been discovered too late to apply to the probate court for relief, the court of chancery has jurisdiction, in aid of the probate proceedings, to set aside orders fraudulently procured:

"He who invokes the aid of a court of equity to set aside a judgment rendered against him in a court of law must show by his bill that he has been diligent in prosecuting his remedy at law. If he had the opportunity to interpose his defense at law and failed to avail himself of it, a court of equity will close its door to him." *Weisman* v. *Beef Co.*, 154 Mich. 511 (118 N. W. 2).

And:

"The allegations of the bill of complaint in equity to obtain an injunction against a judgment at law must be positive, explicit, and certain, and, if fraud is the ground upon which the aid of equity is asked in relieving against a judgment, it is not sufficient to incorporate in the bill general allegations of fraud, deceit, or misconduct, but the specific facts constituting the alleged fraud must be set forth." *Andrews* v. *Osborn*, 159 Mich. 77 (123 N. W. 599).

There is no allegation in the present bill of complaint of any diligence whatever on the part of complainant Smith in protecting her rights; nor that she discovered the frauds complained of too late to bring them to the attention of the probate court and procure the correction of the accounts; nor that she was ignorant of their existence; nor that they were not passed upon by the probate court. There is no allegation that she did not have due notice and opportunity to be heard with full knowledge of the facts. There is no explanation offered in the bill as to why she

did not appeal to the circuit court or petition the probate court to set aside the orders. In short, so far as anything to the contrary in this bill is concerned, the complainants, with full information as to the facts necessary to protect their rights, have voluntarily delayed until their remedies at law have been lost by lapse of time. The record shows that the probate proceedings were regular; the bill does not successfully impeach them for fraud; and the bill of complaint was properly dismissed. *Andrews* v. *Osborn, supra.*

The decree is affirmed.

MOORE, MCALVAY, BROOKE, and STONE, JJ., concurred.