BUCK *v.* LOCKWOOD.

1. EQUITY—BILL OF COMPLAINT—MULTIFARIOUSNESS—PLEADING—
   ESTATES OF DECEDENTS.

   It was not a ground of objection to a bill of complaint, filed
   against a decedent's estate, for an accounting and the
   allowance of a note against the estate and to set aside a
   deed of trust property by a trustee defendant, that it was
   multifarious, where all the defendants were interested,
   though separately, or in different degrees, as to the sub-
   ject-matter of the controversy.

2. ESTATES OF DECEDENTS—JUDGMENT—EXECUTORS AND ADMINIS-
   TRATORS—RES JUDICATA—ASSIGNMENTS FOR BENEFIT OF CREDI-
   TORS.

   An administrator who is made a party to a suit as a rep-
   resentative of the estate binds the heirs and others having
   interests so as to conclude their rights.

3. EQUITY—TRUSTEES—PURCHASER IN GOOD FAITH—BONA FIDES—
   JURISDICTION.

   One who purchased from a trustee for creditors under a
   written instrument of trust with full notice of the facts
   and source of the title, could not question the jurisdiction
   of the court of equity, under a bill of complaint filed to
   set aside the transfer and enforce complainant's rights
   under the trust instrument.

4. SAME—PROBATE COURT—TRUSTS.

   The probate court having jurisdiction of an estate of a
   decedent has no power to determine the question of who
   should pay any deficiency that might remain after apply-
   ing the proceeds of a trust assignment to the satisfaction
   of debts owing by the deceased or to adjudicate the rights
   of the trustee, beneficiary and *cestui que trust*, and pur-
   chaser at trustee sale; it was a proper subject for the
   court of equity in the county in which real property in-
   cluded in the trust was located; and the court properly
   determined the question of deficiency and whether the
   promissory note of decedent, which the real estate was
   transferred to secure, was given for the alleged purposes.

5. SAME—EXCLUSIVE JURISDICTION—EXECUTORS AND ADMINISTRA-
TORS.

The jurisdiction of probate courts was meant to be exclu-
sive, except as the court of chancery, in special cases,
might render them aid or assistance, by means of auxiliary
remedies as might be needful to prevent wrong and in-
justice, in cases where the probate jurisdiction may be
rendered effectual.

6. SAME—TRUSTS—CONVEYANCE TO TRUSTEE—BREACH OF DUTY.

Where the trustee for the benefit of creditors of an as-
signor was charged with wrongfully conveying the trust
property to a third person, who it was understood should
reconvey to the trustee, the court of equity had jurisdic-
tion, if the trust could not be enforced without its aid,
and the complexity of the various claims of the interested
persons required equitable cognizance.

7. SAME—RES JUDICATA.

The judgment of the probate court, not on the merits of
such suit, but in effect determining that the note of dece-
dent, presented against the estate, was not a claim against
his estate, and there was no liability thereof to the trustee,
was not conclusive of the issues raised by a bill of com-
plaint to enforce the trust and determine the liability for
a deficiency of the estate.

8. SAME—FRAUD—NECESSITY OF CHARGING.

Because there was no charge of fraud in the pleadings,
and the parties appeared, or were found, to have acted
in good faith, did not preclude relief, and the right to
relief did not depend on the bad faith of the trustee,
whose conveyance contrary to the terms of his trust could
be set aside, though executed in good faith.

9. SAME—COURTS—REAL PROPERTY—JURISDICTION.

But the circuit court of Ionia county could not assume
jurisdiction to pass on deeds given by decedent in Ingham
county, which did not relate to the primary issues in the
chancery case in the former county, though it had author-
ity to pass on the deficiency and accounting, and to pass
on the values of real and personal property of the dece-
dent. The subject-matter being purely local, the court of
the county in which the real property was situated alone
had jurisdiction.

Appeal from Ionia; Davis, J. Submitted April 20, 1916. (Docket No. 77.) Decided September 27, 1916. Rehearing denied December 22, 1916.

Bill by Edwin A. Buck, trustee, against Fred S. Lockwood, Lorenzo Webber, and others, for an accounting and to set aside certain deeds. From an order overruling separate demurrers to the bill, defendants appeal. Modified and affirmed.

*George E. Nichols* and *A. R. Locke,* for complainant.

*W. T. Webb, C. H. McLean, Ellis, Mathews & Ellis,* and *Ellis & Ellis,* for defendants.

STEERE, J. This is an appeal from an order overruling a general demurrer or demurrers to plaintiff's bill in chancery in the above-entitled suit filed in the circuit court of Ionia county. The learned circuit judge who heard and passed upon this demurrer in the first instance has painstakingly stated the material parts of the pleadings and reviewed the questions involved in a carefully considered and helpful opinion which, after examination of the record and authorities cited in briefs of counsel, we find sufficiently and clearly states the case and issues raised and reasons to right conclusions, except as to subdivision V, touching jurisdiction of the Ionia county court to directly decree against title to lands in Ingham county, which will be considered later. The opinion is as follows sectional references being to How. Stat. [2d Ed.]) :

"I. Substantially the different demurrers raise the following questions:

"(1) That the bill is multifarious for the reason that divers distinct matters and causes in which the defendants are not jointly in any manner interested or concerned are attempted to be tried in one cause of action and under one bill of complaint.

"(2) Because the circuit court for the county of Ionia, in chancery, has no jurisdiction, inasmuch as

the matters involved must be tried and determined in a suit at law in the probate court for the county of Ingham.

"(3) Because there is no privity between the complainant and any of the defendants which would enable him to call upon the defendants for the payment of any debt due from the estate of Charles E. Lockwood, deceased, to him or any of the parties for whom he is acting.

"(4) Because it appears from the bill that Webber was acting for the complainant and others, and that, inasmuch as no fraud of any kind is charged against any of the defendants, which would include Webber, a court of equity has no jurisdiction, under the circumstances stated in the bill, to set aside or hold for naught any conveyance or sale of the property made by Webber to the Portland Farmers' Elevator Company.

"(5) Because the probate court for Ingham county, having assumed jurisdiction over the estate of Charles E. Lockwood, deceased, and such matters having been tried before the commissioners on claims and appealed, and the judgment of the circuit court rendered disallowing the claim against said estate asserted by Lorenzo Webber, trustee, and such judgment now being in full force and effect, that it is binding upon the complainant and the beneficiaries under the trust, and that the matters cannot be retried in this proceeding.

"II. The statement of facts made in the bill of complaint must be taken as true, and, adopting this rule, upon an examination of the bill, I find that it appears therefrom that on the 29th day of July, 1911, Fred S. Lockwood was indebted to the Webber State Savings Bank, of which Lorenzo is cashier, in the sum of $8,000, to the heirs of John A. Webber, of whom Lorenzo Webber is one, in the sum of $14,500, and to complainant in the sum of $2,000, and, being so indebted, an agreement was entered into by which said Lockwood executed and delivered to Lorenzo Webber, for the use and benefit of the parties mentioned, a trust conveyance to secure the payment of such indebtedness. By this conveyance Webber was given power and authority to take possession of the prop-

erty described in the trust instrument and consisting of real estate and personal property and to continue the elevator business that Lockwood was engaged in or close, it out at private or public sale, as he (Webber) might determine.

"That on the 3d day of August following the execution and delivery of the instrument mentioned Lockwood approached the complainant and said to him that he believed he could pay off the indebtedness secured if he could have more time, and it was then talked that if Lockwood would get his father, Charles E. Lockwood, to sign a note for $6,000, to be delivered to Webber as trustee as additional security, for a consideration, it would be granted, giving Fred S. Lockwood an opportunity to pay off the indebtedness, and that said note was given and made payable to the Webber State Savings Bank or bearer, delivered to complainant by Fred S. Lockwood, who in turn delivered the note to Webber as trustee, and informed him of the arrangement that he had made with Lockwood, and Webber accepted the note as additional security, placed it in an envelope, and so marked it, and in pursuance of this arrangement Lockwood went on with the business, drawing money from the bank and depositing therein to the account of Fred S. Lockwood, elevator, Lorenzo Webber, trustee.

"The matter stood in this way until September 23, 1912, when Lockwood brought to Mr. Webber a note for $6,000 due on April 23, 1913, signed by Charles E. Lockwood, which was accepted by Webber as a renewal of the original note and as additional security for the liabilities of Lockwood, represented under said trust agreement; that after this last note was given the business was carried on until January, 1913, when, for certain reasons, Mr. Webber took possession of the properties and conducted it under his personal management until the 14th day of June, 1913, at which time he closed down the plant and proceeded to advertise the property for sale at public auction on the 8th of July, 1913. Webber published notices in the different newspapers and posted the same and did all in his power to give publicity to the sale in the hope of realizing as much as possible for said property, and a fair, open sale was held on July 8, 1913. The property was

sold for $9,300. There was some cash on hand, which added to the amount received from the sale of the property, and, after deducting the current debts of the elevator business, left a deficit of more than $10,-000 upon the original indebtedness secured by the trust instrument; that Webber then claimed the liability became fixed upon the $6,000 note which he held as trustee, and which was given as additional security by Fred S. Lockwood and signed by his father.

"Charles E. Lockwood died on the 5th day of March, 1913, leaving a small personal estate. His heirs at law were Fred S. Lockwood, J. B. Lockwood, Oda G. Watson, Effa G. Lockwood, and Neita Dey. On the 2d day of May, H. J. Watson was appointed administrator of his estate by the probate court for the county of Ingham. Commissioners on claims were appointed, and Webber filed his claim setting forth in an affidavit the facts, in part as hereinbefore stated, and the matter came on for hearing before the commissioners and was disallowed. An appeal was taken to the circuit court for the county of Ingham, and the case came on to be tried before the circuit court for that county on the 1st of February, 1915. From the testimony in the case it appeared that Webber had sold and conveyed the personal and real estate set forth in the trust instrument to one Jed H. Briggs; that said Briggs purchased said property at the instigation of Webber, to the end that a fair valuation might be obtained for the same; that there were no purchasers or bidders at the sale who would bid an amount which reasonably represented the true valuation of the property, and, inasmuch as there were no bids in excess of the amount bid by said Briggs, the property was struck off to him for $9,300 by Webber as trustee, who thereafter made conveyance to Briggs in pursuance of the sale, and on the 12th day of July, 1913, Briggs and his wife conveyed to Webber, as trustee for the beneficiaries under the trust instrument given by Lockwood.

"At the close of trial of the case a motion was made on behalf of the estate that, inasmuch as the sale was invalid and void for the reason that Webber, as trustee, could not, under the law, convey the premises and property to Briggs for the purpose of having

Briggs reconvey the property to him as trustee, the claimant was not entitled to recover upon the note because there was no valid sale, and therefore it could not, in the circuit court, on the law side thereof, be determined whether or not there was a deficiency so as to fix the liability upon said note so delivered to the said Webber as trustee as additional security to the general indebtedness of said Fred S. Lockwood; that after the argument of this motion the court decided and determined that the complainant was not entitled to recover, for the reason that the sale was invalid and void and conveyed no title, and that there was no way to determine in this case whether or not there was a deficiency upon the note, and thereupon directed a verdict against Webber as trustee.

"On the 24th of October, 1913, Webber and his wife conveyed the real estate and some of the personal property to the Portland Farmers' Elevator Company, who thereupon took possession thereof, and who is now in the possession and control of the property; that the company, through its officers and representatives, understood and knew of the sale and of all of its conditions and how made and the purpose thereof, and took said property with full notice of any defect in title or any invalidity of the sale; that under the ruling and judgment of the circuit court for Ingham county there has been no valid and legal sale of the premises, and the whole matter stands as if no sale had been made, and that under such conditions there was no way of determining the question as to whether there is a deficiency between the actual value of the property coming into the hands of Lorenzo Webber, trustee, and the amount of the original indebtedness, to secure the payment of which said trust agreements were executed and delivered, except by a court of equity upon an accounting, or by setting aside the deed so given to the Portland Farmers' Elevator Company and reselling said property and accounting for the sale of the personal property at its true and actual value, as near as may be; that upon such an accounting either by way of charging Lorenzo Webber, trustee, with the full value of all the property in his hands upon the 8th of July, 1913, the date of the sale, or by a resale of the property, there would be a de-

ficiency or shortage in either case of at least $10,000, and the full and complete liability upon said note so given as additional security would thereupon become fixed and determined, and the complainant and his cobeneficiaries would be entitled to the benefits and advantages which would arise from the fact of having said note as additional security for said indebtedness.

"Charles E. Lockwood before his death was possessed of real estate in Ingham county worth $10,000 and upwards. On the 1st of February, 1913, he conveyed this property to the defendants Oda G. Watson, Effa G. Lockwood, and Neita Dey, his daughters, for a consideration of love and affection only, and afterwards Oda G. Watson and Effa G. Lockwood conveyed their interests to Ora W. Dey and Neita Dey. On the same day Charles E. Lockwood conveyed other lands to J. B. Lockwood, his son, for a consideration of love and affection only, and they afterwards conveyed that property, so that by mesne conveyances the title passed to James R. Fisher and Mary E. Fisher, two of the defendants.

"The estate of Charles E. Lockwood has not been closed nor the administrator discharged, and the personal property is wholly insufficient to pay the claims allowed and the expenses of administration. The real estate so conveyed must be made subject to the payment of these claims and of this claim, if it is paid at all, and upon these facts the complainant asks the following relief:

"(1) That Lorenzo Webber, trustee, come to an accounting of all the property received under the trust deed and conveyance from Fred S. Lockwood, and that he be charged with the true, just, and reasonable value thereof.

"(2) That the conveyance made by the said Lorenzo Webber as trustee to the Portland Farmers' Elevator Company be set aside and held for naught; or, in case the court shall so determine that the true value of said premises so conveyed at the date of said conveyance to the said company be fixed and determined by the court, and that Webber be charged with the sum, together with all moneys and property that he has received by virtue of his office as trustee.

"(3) That the amount of indebtedness to said Webber as trustee be also fixed and determined, and the amount of property he should be charged with on such accounting be applied thereon and the deficiency, or shortage, if any, be fixed and determined by the court to the end that the liability of the said Fred S. Lockwood to the complainant and the other beneficiaries under the trust be fixed and determined, after the aplication of all the properties, moneys, and effects that the said Lorenzo Webber as trustee may be found charged with, as hereinbefore prayed.

"(4) That the purpose and object of the delivery of the $6,000 note by Charles E. Lockwood and Fred S. Lockwood to the said Lorenzo Webber, trustee, be determined and adjudged, and the liability fixed thereon, and that, if said notes were given as additional security to the general indebtedness of Fred S. Lockwood, and upon a fair accounting there is a deficit equal to the whole or any part of the notes, then and in that case the property of the said Charles E. Lockwood, deceased, be made subject to a lien for the purpose of the enforcement and collection of the note.

"(5) That unless the parties to whom this property has been conveyed, or their grantees, pay such sum as the court shall find due upon this note within a reasonable time, that the deeds of conveyance to them of the property of the said Charles E. Lockwood, deceased, be set aside and held for naught, so far as the rights of the beneficiaries under the trust are concerned, and they be given a lien thereon, with power to sell, for the purposes of enforcing the decree.

"(6) That, after the application of such sum, whatever deficiency or shortage or balance, if any, there may be, that a judgment or decree be rendered against Fred S. Lockwood individually, and he be required to pay the same, in default thereof that execution issue in the usual form, and that the complainant have general relief.

"III. Considering the different grounds of the demurrer, I have no hesitancy in deciding that the ground of multifariousness is not well taken, and as a matter of fact it has not been seriously urged, either upon the briefs filed or upon the argument on the part of counsel for the defendants, and as a matter of fact

in their reply brief counsel for the defendants admit that the real object and purpose of the bill of complaint is to have allowed or get allowed against the estate of Charles E. Lockwood the note in question. Counsel for complainant takes the same view of the matter, and upon that question both counsel agree, and I think myself that such is the sole purpose and object of the bill. Therefore, under all of the holdings of the cases as I find them, the bill cannot be said to be multifarious. It seems to be the settled law that a bill is not multifarious if it be single as to its subject-matter and object thereof and the relief sought if all the defendants are connected, though differently, with the whole subject-matter of the dispute, and again, when the object of the bill is single, to establish and obtain relief for one claim in which all the defendants may be interested, or is not multifarious, although the defendants may have different and separate interests. Puterbaugh's Mich. Chancery, p. 21; *Payne* v. *Hook,* 7 Wall. (U. S.) 425. There are many Michigan cases upon the subject which are cited in the brief of counsel for the complainant that uphold this doctrine, especially the case of *Hulbert* v. *Detroit Cycle Co.,* 107 Mich. 81 (64 N. W. 950). In that case the complainant filed a bill for the sole purpose of impounding all the assets of the debtor to pay his debts, and it was held that he might join every person as a defendant to whom the debtor had conveyed his property, and it was stated to be the established rule that a creditor may make all such parties defendants, and thus avoid a multiplicity of suits, and that, though the matters set forth in the bill are distinct, yet, if justice can be administered between the parties without a multiplicity of suits, the objection of multifariousness will not prevail. Therefore I feel that I am obliged, under all the authority, to overrule the demurrers to this bill upon the ground of multifariousness.

"IV. A more serious question, to my mind, is that raised by the second ground of the demurrer, and that is that the question of whether or not the estate is liable should be determined by the probate court for Ingham county, and that the circuit court for the county of Ionia in chancery has no jurisdiction.

"It becomes necessary at the very outset to deter-

mine whether there is a deficiency or not. In fact, that was the point that ruled in the trial before the circuit court for the county of Ingham. There the court held, upon motion of counsel for the estate, that, the sale of the property being invalid and void, it was to be treated as if no sale had been made; also that there was no way in a court of law to determine whether there was any deficiency or not, and for that reason, as I understand it, the claimant was non-suited.

"There is no question, I think, as to the general rule that the administrator representing an estate, when a party to a cause can bind by his acts the heirs of the estate, and moreover, the judgment of the court in an action of that character is binding upon all, and, that being true, it follows that the judgment of the circuit court for the county of Ingham is binding upon all of the parties, except, perhaps, the Portland Farmers' Elevator Company, and as to that it is not important or material, for the only interest that defendant has in the controversy is to protect its title which it received from Lorenzo Webber, trustee, and, knowing all the facts in relation thereto, and just what had been done, so that it took the title with full knowledge of how Webber obtained it and with notice of its weaknesses and defects, if any, it is not in a position to question the jurisdiction of the court in this case.

"The probate court for Ingham county has no power to determine the question of deficiency, or to grant any relief, under the circumstances. That has been ruled. Now, then, what court has jurisdiction? It cannot very well be questioned but what the parties directly in interest on the question of deficiency are the Portland Farmers' Elevator Company, Fred S. Lockwood, Lorenzo Webber, trustee, and the complainant and those in whose behalf the bill is filed. All of these are residents of Ionia county, and the property is located in Ionia county which was covered by the trust deed over which this difficulty arises, and so I take it that the question of deficiency, if any, is triable in this court, and no other court has jurisdiction.

"The question next to be determined is whether this note was given for the purpose alleged. Of course, so far as the demurrers are concerned, that fact is

admitted, and there is no occasion for the interposition
of the probate court, but considering the answers,
which deny the allegations in that regard, neverthe-
less has this court of equity power to determine that
question under the facts and circumstances of the
case? That seems to be the exact question raised by
the second ground of the demurrer.

"The powers and jurisdiction of judges of probate
courts in Michigan will be found in sections 12098
and 12099 of the Michigan statutes [5 How. Stat. (2d
Ed.), 3 Comp. Laws 1915, § 13764], and it has been
held uniformly that the probate court has exclusive
jurisdiction in the matter of the allowance of claims
against an estate with certain exceptions. See *Nolan*
v. *Garrison*, 156 Mich. 397 (120 N. W. 977), also *Davis*
v. *McCamman*, 165 Mich. 287 (130 N. W. 691).

"In *Holbrook* v. *Campau*, 22 Mich. 288, it was said:

" 'And we have no doubt that jurisdiction in those courts was
meant to be exclusive, except as the court of chancery, in ex-
ceptional cases, might render them aid and assistance by means
of such auxiliary remedies as might be needful to prevent wrong
and injustice before the probate jurisdiction could be rendered
effectual.'

"Applying these rules to the facts in this case, and
the further rule that where, instead of a complexity
of controversies between the parties with respect to
the same subject-matter, the complexity arises from
there being involved the several rights of more than
two, each attempting adjustment and each requiring
at law a separate action, equity will take jurisdiction
of a suit to which all are parties, and therein adjust
all rights and determine the whole controversy.

"I am satisfied that under ample authority this
court has jurisdiction to determine not only the ques-
tion of the deficiency, but the further question as to
whether the note was given for the purpose claimed
and set forth in the bill. In other words, equity once
having acquired jurisdiction, it will retain it to give
such full relief as will finally dispose of the entire
controversy, and, this being the view of the court,
the demurrers upon the ground of want of jurisdic-
tion of this court are overruled.

"V. It has been urged very strongly in the brief

and in the argument that the demurrer should be sustained as to the defendants, the heirs of Charles E. Lockwood, to whom he conveyed his property, and their grantees, for the reason that, although this court might have jurisdiction to determine the question of deficiency, yet it had no jurisdiction over the property in Ingham county, and could not set aside any conveyance made for the purpose of aiding and assisting any decree rendered by this court by way of a judgment upon such note or otherwise.

"The statutes of this State upon the question of reaching property where the same has been conveyed when there is not sufficient assets to pay the debts of the deceased will be found in sections 11064, 11074, 11075, and 11076 of the Michigan statutes [4 How. Stat. (2d Ed.), 3 Comp. Laws 1915, §§ 13849, 13859-13861]. Under this statute H. J. Watson could file a bill to set aside those conveyances, and, if he refused to do so, then the creditors could proceed direct. See *McFarlan* v. *McFarlan*, 155 Mich. 655 (119 N. W. 1108). In that case it has been held by the Supreme Court of this State that there is no question but what a court of equity in a direct proceeding instituted on behalf of a creditor, upon leave of the court, where the administrator has refused to act, could file a bill for the purpose of reaching the property.

"Now, then, applying also the rule as to settling all questions in controversy, and once for all ending the litigation and avoiding a multiplicity of suits, I am satisfied that the circuit court for Ionia county, in chancery, has power to make the necessary orders and decrees to the end that the property described in the bill as belonging to the estate of Charles E. Lockwood, deceased, may be charged with this debt in this case, and that the conveyances may be set aside, if necessary to satisfy the same, and for that reason I think that this ground of the demurrer must be overruled. Moreover, it is my opinion that section 11951 of the Michigan statutes [4 How. Stat. (2d Ed.) 3 Comp. Laws 1915, § 12340, subd. 12], providing that in every suit in chancery affecting real estate, and where real estate is situated in different counties, it shall be competent to file a bill in equity in either of the counties in which the real estate or a part of it may be sit-

uated, and that this section of the statute gives this court jurisdiction.

"VI. It is claimed that the bill charges no fraud, and therefore a court of equity has no jurisdiction. I have not been impressed with this point very much. The bill, in a way, is to reach property that has been conveyed illegally by a trustee; that is, the property conveyed to the Portland Farmers' Elevator Company. There can be no question, under the law, but what this property can be reached whether the trustee acted in fraud or good faith. That question was settled in *Gibney* v. *Allen*, 156 Mich. 301 (120 N. W. 811). So in this case relief does not depend upon the question of good faith of Webber in selling this property. It is purely a question of whether the matter has become so mixed and the property placed in that condition that without the aid of the court the trust cannot be carried out, and it appears that such is the situation. The property under the trust was conveyed by Webber, evidently in good faith, but perhaps under a mistaken view of the law, and it may be true, at least I shall assume it is true, and that Judge Wiest was correct in his holding that it was the same as no sale, and therefore without the interposition of a court of equity the complainant and his cobeneficiaries are left without remedy, and therefore, under such circumstances, I have no hesitancy in holding that it is not necessary to charge fraud to give the court jurisdiction, and therefore I feel compelled to overrule this ground of the demurrer.

"VII. I do not think it is necessary to spend any time upon the last ground of the demurrer, that is, that the probate court or the circuit court for the county of Ingham having once assumed jurisdiction and disallowed the claim, it becomes *res adjudicata*, and this court has no jurisdiction in the premises.

"A judgment, to be a bar to a subsequent action, must have been rendered upon the merits of the subject-matter, and between the same parties no claim of this kind can be made or is made, as I understand it, and, under the authority of Michigan and elsewhere, the fact that the circuit court for Ingham county having held that until the deficiency was determined there could be no recovery, and upon that ground nonsuited

the claimant, it would be absurd to hold that that ruling was a bar to any proceedings taken thereafter for the purpose of determining that very question. I think the case of *Laird* v. *Laird's Estate*, 127 Mich. 24 (86 N. W. 436), settles the question beyond any controversy, and it is unnecessary to discuss it further, and that ground of the demurrer is overruled."

We are unable to agree with the conclusion of the learned circuit judge that because the circuit court of Ionia county, in chancery, acquired jurisdiction to enter into an accounting and determine the deficiency of an insolvent estate, and in so determining pass upon the quality and value of its real and personal assets, including land within that county and the Charles Lockwood note, it thereby acquired jurisdiction to set aside deeds given by Lockwood to lands in Ingham county. He is not claimed to have owned land in "different counties." While the administrator, or, in case of his refusal, creditors, might file a bill in the county where the land lies to set aside those conveyances, if the assets of the estate otherwise proved inadequate to pay its debts, the subject-matter is purely local, and only the county in which the land is located has jurisdiction for that purpose. *Chapin* v. *Circuit Judge,* 104 Mich. 232 (62 N. W. 351).

The decree will therefore be modified accordingly, sustaining the demurrer of the heirs of Charles Lockwood to whom he conveyed his land in Ingham county and their grantees, with costs to them, and otherwise affirmed, with costs to complainant against the remaining defendants.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.